## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.   _____

MARK WILSON, an individual, and WILSON LAW LTD, a Colorado limited liability company,

     Plaintiffs,

v.

ADVISORLAW LLC, a Colorado limited liability company, DOCHTOR DANIEL KENNEDY, an individual, and STACY SANTMYER, an individual.

     Defendants.

---

## COMPLAINT

---

Attorney Mark Wilson (Mr. Wilson) and Wilson Law Ltd. (Wilson Law) hereby commence a civil action for injunctive and compensatory relief against AdvisorLaw LLC (AdvisorLaw), Attorney Dochtor Daniel Kennedy (Mr. Kennedy), and Enrolled Agent Stacy Santmyer (Mr. Santmyer).  The Affidavit of Jason Bacher, enclosed as **Exhibit 1**, contains a disturbing account of AdvisorLaw's and Mr. Kennedy's intentional torts and criminal acts.  Based on their personal knowledge, experiences, and beliefs, the Affidavit of Jason Bacher, and their attorneys' interviews and investigations, Mr. Wilson and Wilson Law hereby allege their causes of action.

**INTRODUCTION**

1.      AdvisorLaw, led by Mr. Kennedy, and Wilson Law, led by Mr. Wilson, became business competitors in Colorado after AdvisorLaw chose to terminate its business relationships with Mr. Wilson and Wilson Law on or about October 1, 2016.

2.      On November 2, 2016, Mr. Kennedy informed Mr. Wilson it had recently come to his attention that Wilson Law was competing against AdvisorLaw.  Later that day, Mr. Kennedy, acting as AdvisorLaw's agent, impersonated a fictitious person named Patrick Erickson and published false and defamatory statements about Mr. Wilson and Wilson Law on the Ripoff Report[1] website.

3.      Mr. Kennedy published the fake review to disparage Mr. Wilson and Wilson Law, prevent them from competing fairly against AdvisorLaw, and influence consumers' purchasing decisions by deceptive means.  His actions violated Ripoff Report's Terms of Service and violated consumer protection, criminal, and intellectual property statutes.

4.      The next day, Mr. Kennedy admitted to other AdvisorLaw agents that he had published the fake review.  Weeks later, Mr. Kennedy and Mr. Santmyer encouraged each other and other AdvisorLaw agents to lie about or help conceal what Mr. Kennedy did.

---

[1] Ripoff Report profits from enabling its users to publish defamatory reports about businesses and individuals without verifying the reports' veracity or determining whether the reports' authors violated criminal, consumer protection, intellectual property, or unfair competition laws.  In its General Frequently Asked Questions (FAQ) webpage, the company claims it will not delete reports and explains its policies.  A copy of Ripoff Report's FAQ webpage was captured on May 11, 2017, and is attached as **Exhibit 2**.

5.      After he came to believe Mr. Wilson and Wilson Law might take legal action against him for his illegal and unlawful conduct, Mr. Kennedy told at least one other person that if Mr. Wilson and Wilson Law sued, Mr. Kennedy would "crush" Mr. Wilson, ruin Mr. Wilson's marriage, end Mr. Wilson's career, and cause Mr. Wilson to lose his ability to practice law.

## PARTIES, JURISDICTION, AND VENUE

6.      Mr. Wilson lived in Arapahoe County, Colorado, when the events described herein occurred, and still lives there.

7.      Wilson Law is a Colorado limited liability company that operated in Arapahoe County, Colorado, when the events described herein occurred.

8.      AdvisorLaw is a Colorado limited liability company that operated in Broomfield County, Colorado, when the events described herein occurred.

9.      Mr. Kennedy owned AdvisorLaw when the events described herein occurred.

10.     Mr. Kennedy lived or worked in Jefferson County, Colorado, when the events described herein occurred, and still lives or works there.

11.     Mr. Santmyer lived or worked in Boulder County, Colorado, when the events described herein occurred, and still lives or works there.

12.     Mr. Wilson and Wilson Law assert claims that arise under Section 43(a)(1)(B) of the Lanham Act, the Colorado Consumer Protection Act (CCPA), the Colorado Organized Crime Control Act (COCCA), and Colorado's common law.

13.     This Court has original jurisdiction over this action under 28 U.S.C. § 1338(a).

14.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims

not based on federal statutes, since the claims are so related to the other claims within this

Court's original jurisdiction that they form part of the same case or controversy.

15.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because the events or

omissions giving rise to the claims occurred in this Court's judicial district.

## FACTS

### AdvisorLaw's Business Relationship with Mr. Kennedy

16.     Mr. Kennedy formed AdvisorLaw PLLC in Colorado on February 11, 2016.

17.     AdvisorLaw PLLC's Articles of Organization state its principal office is 3400

Industrial Lane, Ste. 10A, Broomfield, CO, 80020; its registered agent is Dochtor Daniel

Kennedy; and its registered agent's address is 9426 Juniper Way, Arvada, CO 80007.

18.     AdvisorLaw PLLC was a Colorado law firm.

19.     Mr. Kennedy owned AdvisorLaw PLLC or was one of its owners.

20.     Mr. Kennedy filed documents with the Colorado Secretary of State to change

AdvisorLaw PLLC's name to AdvisorLaw LLC on July 11, 2016.

21.     AdvisorLaw LLC is a Colorado law firm.

22.     Mr. Kennedy owns AdvisorLaw LLC or is one of its owners.

23.     Each AdvisorLaw LLC owner authorized Mr. Kennedy to manage AdvisorLaw

LLC's operations.

24.     Mr. Kennedy has been AdvisorLaw LLC's President and Managing Attorney since it was formed.

25.     The date this civil action commenced, the Colorado Supreme Court Office of Attorney Regulation Counsel published the following information about Mr. Kennedy at http://www.coloradosupremecourt.com/Search/Attinfo.asp?Regnum=45851

    i.     **Name:** Kennedy, Dochtor Daniel

    ii.     **License Status:** Active

    iii.     **Registration Bar Number:** 45851

    iv.     **Is in Private Practice:** Yes

    v.     **Carries Professional Liability Insurance:** No

    vi.     **Admission Date:** 5/28/2013

    vii.     **Phone:** (720) 282-5254

    viii.     **Fax:** (720) 452-0613

    ix.     **Firm Name:** ADVISORLAW PLLC

    x.     **Business Address:** 3400 INDUSTRIAL LANE, UNIT 10A, BROOMFIELD, CO 80020

**AdvisorLaw's Business Relationships with Mr. Wilson and Wilson Law**

26.     Mr. Wilson began working for AdvisorLaw LLC on or about May 1, 2016.

27.     A month later, on June 2, 2016, Mr. Wilson formed Wilson Law Ltd. in Colorado.

28.     AdvisorLaw and Wilson Law formed a Service Contract during June 2016.

29.     Mr. Kennedy, acting on AdvisorLaw's behalf, and Mr. Wilson, acting on Wilson Law's behalf, agreed to make the effective date of the Service Contract May 1, 2016.

30.     Mr. Wilson, through Wilson Law, provided the following services to AdvisorLaw consistent with the Service Contract's terms: legal services; generation of sales or revenue; client acquisition; law-related services; and training.

31.     On September 28, 2016, Mr. Kennedy informed Mr. Wilson that AdvisorLaw wanted to terminate the Service Contract.

32.     On October 1, 2016, Mr. Wilson, acting on Wilson Law's behalf, signed a document titled Service Contract Termination that terminated the Service Contract.

### AdvisorLaw's and Mr. Kennedy's Motives

33.     On November 2, 2016, at 2:29 p.m., Mr. Kennedy, using his AdvisorLaw email address, doc@advisorlawyer.com, sent Mr. Wilson an email that stated:

> There's an issue that recently came to my attention of you competing with my business; disclosure of proprietary information; possible appropriation of our property; copyright infringement; and other things.
>
> It was very disheartening to see what you are doing. My expectations and assumptions about you were pretty far off.
>
> I will mail your check for $310 today.

34.     On November 2, 2016, at 3:03 p.m., Mr. Wilson sent Mr. Kennedy a response email that stated:

> I appreciate you sending the check promptly as well as signing our formal termination (unless for some reason you don't want to terminate).
>
> As far as the other things you bring up: I have my company, my livelihood, and yes, among other practice areas, I suppose a part of what we offer will compete with your business. The other accusations are false.
>
> I'm not sure what you find disheartening, but I feel quite the same about my expectations of you.
>
> As I've said, feel free to give me a call if you need anything.

35.     On November 2, 2016, at 3:51:05 p.m., Mr. Kennedy, using his AdvisorLaw email

address, sent Mr. Wilson a reply email that stated:

> Mark, you're using documents that my company and I created. You're using a photo to which I own the rights and for which I paid the photographer. You put AdvisorLaw on your LinkedIn, which is an unauthorized affiliation with us for your own financial benefit. You are contacting AdvisorLaw clients and seeking to engage them. Every single one of these is documented. They aren't false accusations.
>
> My concern is that you were stealing from me the whole time. I am inclined to file a law suit and find out whether or not that occurred by way of the discovery process. It's really just a matter of deciding which causes of action to pursue.
>
> It is disheartening because I gave you a great opportunity and you're stealing from me. You're trying to steal business, you've stolen my work (forms, letters, pictures, etc…). You have chosen to compete with me on something that I brought you into as a friend. The fact that you aren't sure why that is disheartening speaks for itself.

### AdvisorLaw's and Mr. Kennedy's Criminal Acts

36.     Mr. Kennedy wanted to injure Mr. Wilson and Wilson Law for competing against AdvisorLaw.

37.     Shortly before 7:23 p.m., November 2, 2016, Mr. Kennedy, acting on behalf of AdvisorLaw, began to commit the first criminal act for a pattern of racketeering activity he and others would later commit against Mr. Wilson and Wilson Law.

38.     On November 2, 2016, at 7:23 p.m., while in Colorado, Mr. Kennedy impersonated a fictitious person named Patrick Erickson of New York and used this fictitious identity when he published a false and defamatory review of Mr. Wilson and Wilson Law on the Ripoff Report website (https://www.ripoffreport.com).

39.     The number Ripoff Report assigned to the review Mr. Kennedy wrote and submitted to Ripoff Report for publication is 1336305 (Report 1336305).

40.     A copy of Report 1336305 webpage's content was captured on April 20, 2017, and is attached as **Exhibit 3**.

41.     A copy of Ripoff Report's Terms of Service was captured on May 11, 2017, and is attached as **Exhibit 4**.

42.     Xcentric Ventures, LLC, a limited liability company that maintains its headquarters in Tempe, Arizona, operates the Ripoff Report website.

43.     After Mr. Kennedy published Report 1336305, search engine companies such as Google and Bing indexed the content and uniform resource locator (URL) or webpage address for Report 1336305 and republished the URL in their search results.

44.     Search engine companies who republished the URL or webpage address for Report 1336305 in their search results did not know when they republished it that Report 1336305 webpage's content was published in violation of Colorado and federal criminal laws, federal intellectual property laws, state consumer protection laws, and state common law.

45.     When search engine companies republished the URL or webpage address for Report 1336305, they made it easier for consumers to find and be harmed by Report 1336305 than it would have been had the search engine companies not republished the URL or webpage address for Report 1336305.

46.     When search engine companies republished the URL or webpage address for Report 1336305, they increased the likelihood AdvisorLaw's and Mr. Kennedy's publication of Report 1336305 would injure Mr. Wilson and Wilson Law.

47.     Mr. Wilson and Wilson Law suffered more injuries because search engine companies republished the URL or webpage address for Report 1336305 than Mr. Wilson and Wilson Law would have suffered had no search engine company republished the URL or webpage address for Report 1336305.

48.     AdvisorLaw and Mr. Kennedy were substantially certain that search engine companies would republish the URL or webpage address for Report 1336305 after Mr. Kennedy published Report 1336305's content via the Ripoff Report website.

49.     AdvisorLaw and Mr. Kennedy were substantially certain that Mr. Wilson and Wilson Law would suffer injuries if search engine companies republished the URL or webpage address for Report 1336305.

50.     AdvisorLaw and Mr. Kennedy intended for Mr. Wilson and Wilson Law to suffer injuries after search engine companies republished the URL or webpage address for Report 1336305.

51.     Before Mr. Kennedy published Report 1336305, he informed Ripoff Report and Xcentric Ventures, LLC, that he understood and agreed to abide by Ripoff Report's Terms of Service.

52.     When Mr. Kennedy agreed to abide by Ripoff Report's Terms of Service, he agreed he would:

  i.    only publish truthful and accurate information on Ripoff Report's website;

  ii.   not publish defamatory material on Ripoff Report's website; and

  iii.  use Ripoff Report's website in a manner consistent with all applicable laws and regulations.

53.     Mr. Kennedy, acting on behalf and for the benefit of AdvisorLaw, intentionally violated Ripoff Report's Terms of Service because when he published Report 1336305, he intentionally:

  i. published untruthful and inaccurate information about his identity, Mr. Wilson, and Wilson Law on Ripoff Report's website;

  ii. published defamatory statements about Mr. Wilson and Wilson Law on Ripoff Report's website; and

  iii. used Ripoff Report's website in a manner inconsistent with rules or laws enumerated in the Lanham Act, the Colorado Organized Crime Control Act, the Colorado Consumer Protection Action Act, other Colorado and federal statutes, and the Colorado Rules of Professional Conduct.

54.     Mr. Kennedy used an electronic device that AdvisorLaw paid for or owned to write and publish Report 1336305.

55.     AdvisorLaw had authorized Mr. Kennedy to use the electronic device he used when he published Report 1336305 before he published Report 1336305.

56.     Mr. Kennedy, acting on behalf and for the benefit of AdvisorLaw, intentionally engaged in conduct that violated C.R.S. §§ 18-5.5-102(1)(a), (b), and (c) when he intentionally used Ripoff Report's computer systems in violation of its Terms of Service.

57.     Mr. Kennedy, acting on behalf and for the benefit of AdvisorLaw, intentionally engaged in conduct that violated C.R.S. §§ 18-5-113(1)(b)(I) and (II) when he published Report 1336305.

58.     Mr. Kennedy, acting on behalf and for the benefit of AdvisorLaw, intentionally engaged in conduct that violated 18 U.S.C. § 1343 when he published Report 1336305.

59.     Mr. Kennedy, acting on behalf and for the benefit of AdvisorLaw, intentionally engaged in conduct that violated Rules 8.4(a), 8.4(b), 8.4(c), and 8.4(h) of the Colorado Rules of Professional Conduct when he published Report 1336305.

**AdvisorLaw's and Mr. Kennedy's Racketeering Activity**

60.     During November 2016, Mr. Kennedy informed the following people that he had written and published Report 1336305: Jason Bacher (Mr. Bacher); Josh Barber (Mr. Barber); JaYoung Kennedy (Mrs. Kennedy); Stacy Santmyer (Mr. Santmyer); and Charles Sisk (Mr. Sisk).

61.     Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk worked on behalf and for the benefit of AdvisorLaw before and after November 2016.

62.     Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk read Report 1336305 during November 2016.

63.     Since November 2016, Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk have known Mr. Kennedy authored and published Report 1336305 based on statements Mr. Kennedy made to them.

64.     Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk knew Report 1336305 contained false and defamatory statements about Mr. Wilson and Wilson Law when they read it.

65.     Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk knew Mr. Kennedy had engaged in conduct that C.R.S. §§ 18-5-113(1)(b)(I) and (II) prohibit when he published Report 1336305.

66.     Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk knew Mr. Kennedy had engaged in conduct that 18 U.S.C. § 1343 prohibits when he published Report 1336305.

67.     Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk knew Mr. Kennedy had engaged in conduct that C.R.S. §§ 18-5.5-102(1)(a), (b), and (c) prohibit when he published Report 1336305.

68.     Mr. Kennedy knew Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk were witnesses who had personal knowledge of his admissions of illegal conduct.

**AdvisorLaw's, Mr. Kennedy's, and Mr. Santmyer's Racketeering Activity**

69.     On or about January 31, 2017, Mr. Wilson and Wilson Law first discovered Report 1336305 had been published online and that its URL or webpage address could be found via search engine companies' search results.

70.     Mr. Wilson and Wilson Law immediately suspected Mr. Kennedy had caused Report 1336305 to be published for the following reasons:

i.  Report 1336305 was published the same day Mr. Kennedy had exchanged emails with Mr. Wilson in which he expressed that he was disheartened by Mr. Wilson's and Wilson Law's competing against AdvisorLaw;

ii.  Report 1336305 published Mr. Wilson's personal cell phone number, which was not listed under any public business records;

iii.  only two of Wilson Law's clients had Mr. Wilson's cell phone number and neither client published Report 1336305;

iv.  Mr. Kennedy knew Mr. Wilson's cell phone number;

v.  Report 1336305 published a former personal address of Mr. Wilson's that Mr. Kennedy knew about but had not been (a) disclosed to any of Mr. Wilson's or Wilson Law's clients or (b) used for Wilson Law's business;

vi.  Report 1336305 stated Patrick Erickson was its author, and none of Wilson Law's current or former clients is named Patrick Erickson;

vii.  Mr. Kennedy was very familiar with the damages that publishing Ripoff Report reviews could cause small businesses because one of his former employers and Mr. Santmyer had been injured by derogatory Ripoff Report reviews and Mr. Kennedy had openly discussed the damages those reviews caused them;

viii.  Mr. Kennedy knew that defamatory reviews published on Ripoff Report could not be removed by their authors due to Ripoff Report's policies; and

     ix.    Report 1336305 published a photo of Mr. Wilson to which few people had

access, one of whom was Mr. Kennedy.

71.    On January 31, 2017, Mr. Wilson asked Mr. Kennedy if he had published Report

1336305.

72.    Mr. Kennedy, knowing that his statement was false, denied having any knowledge

of Report 1336305's publication or author.

73.    Afterward, Mr. Kennedy approached Mr. Bacher and offered him $2,000.00 to

tell others that Mr. Bacher had published Report 1336305 and that Mr. Kennedy had

nothing to do with it.

74.    Mr. Kennedy also offered to pay Mr. Bacher's legal fees related to litigation arising

from Mr. Kennedy's publication of Report 1336305 if Mr. Wilson sued Mr. Bacher.

75.    Later, Mr. Kennedy, knowing his derogatory statements about Mr. Bacher's

motives and involvement were false, told Mr. Wilson that Mr. Bacher had published

Report 1336305.

76.    In an email Mr. Kennedy sent Mr. Wilson on January 31, 2017, he wrote:

> I can send you some links to sites that have come to be solely
> because of how that site doesn't let anything ever come off.
> Their stance is that, if they allow the authors to request
> anything be taken down, then evil corporations will bully
> authors to take down posts.
>
> I have no doubt that someone with enough horse power will
> crush them eventually, but who knows when that will be?

I certainly won't do anything (as far as filing some kind of legal action or anything) without you giving us the green light and reviewing the claim or pleading.

The good news is that there are a lot of people that share your name. I know that's not much, but just Google Stacy Santmyer and you'll see his is at about number three on the first page! I Google Mark Wilson and I flipped through a few pages without a trace.

Jason didn't think it through when he posted that. He was pissed. He thought you were hurting the company and his future. He still thinks you pulled some shenanigans that we don't know about. I can try to get through to him. But the dude is pretty fucking serious. And I think pushing him for an apology has the potential of way more downside with very little upside. He's just one of those dudes that has no real boundaries when it comes to making a point.

I'll try to get him to apologize if that's worth it to you. But I would sleep much better at night if you could be okay with letting me do whatever I can to mitigate this thing. Just work with me to move forward and leave the past in the past. Your call.

77.    After learning Mr. Wilson suspected Mr. Kennedy had written and published

Report 1336305, Mr. Kennedy attempted to persuade Mr. Bacher, Mr. Barber, Mrs.

Kennedy, Mr. Santmyer, and Mr. Sisk to lie or unlawfully withhold testimony about Mr.

Kennedy's prior admissions of illegal conduct.

78.    Mr. Kennedy engaged in conduct that C.R.S. § 18-8-707(1)(a) prohibits when he

attempted to persuade Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr.

Sisk to testify falsely or unlawfully withhold testimony about his admissions of illegal

conduct.

79.     Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk knew Mr. Kennedy had engaged in conduct that C.R.S. § 18-8-707(1)(a) prohibits when he attempted to induce them to testify falsely or to unlawfully withhold testimony about his admissions of illegal conduct.

80.     On multiple dates after January 31, 2017, Mr. Santmyer also encouraged or influenced Mr. Kennedy and others who worked on behalf or for the benefit of AdvisorLaw to state Mr. Bacher wrote and published Report 1336305 and to deny that Mr. Kennedy had authored and published it if they were asked about it.

**Mr. Kennedy's Dishonesty while Representing AdvisorLaw in Settlement Talks**

81.     Mr. Wilson, acting on Wilson Law's behalf, and Mr. Kennedy, acting on AdvisorLaw's behalf, discussed settling claims Mr. Wilson and Wilson Law had against AdvisorLaw after their email exchanges on January 31, 2017.

82.     Mr. Kennedy, while representing AdvisorLaw's legal interests during the negotiation, lied again and told Mr. Wilson that Mr. Bacher had written and published Report 1336305.

83.     In an email Mr. Kennedy sent Mr. Wilson on March 17, 2017, at 10:33:01 MDT, Mr. Kennedy wrote: "The threat of imputing responsibility to AdvisorLaw, and all or any of those who work here (personally) for the actions of a sub-contractor is reaching to say the least." The "sub-contractor" to which Mr. Kennedy referred in the above sentence is Mr. Bacher.

84.    Mr. Kennedy's March 17, 2017, email to Mr. Wilson showed he had also sent the email to greg@bickfordlegal.com.

85.    Attorney Greg Creer of the law firm Bickford Law LLC sends and received emails via greg@bickfordlegal.com.

86.    If all Mr. Kennedy wanted to do was notify Mr. Creer about the email, Mr. Kennedy would have sent Mr. Creer a blind copy of the email or would have forwarded a copy of the email to Mr. Creer.

87.    Instead, Mr. Kennedy chose to reveal to Mr. Wilson that he sent the email to Mr. Creer to lead Mr. Wilson to believe Mr. Creer represented AdvisorLaw or Mr. Kennedy or both in matters related to the publication of Report 1336305.

88.    After receiving Mr. Kennedy's March 17, 2017, email to Mr. Wilson, Mr. Creer did not communicate to Mr. Wilson that he did not represent AdvisorLaw or Mr. Kennedy in matters related to the publication of Report 1336305.

89.    Mr. Kennedy did not communicate to Mr. Wilson that Mr. Creer did not represent AdvisorLaw or Mr. Kennedy after Mr. Kennedy sent the March 17, 2017, email to Mr. Wilson and Mr. Creer.

90.    If Mr. Creer did not know Mr. Kennedy had authored and published Report 1336305 before Mr. Kennedy sent the March 17, 2017, email, then Mr. Kennedy lied to Mr. Creer about who had authored and published Report 1336305.

**Lanham Act Definitions**

91.     AdvisorLaw and Wilson Law are each a 'person' within the meaning of 15 U.S.C. § 1117 because each is an organization capable of suing and being sued in a court of law.

92.     Mr. Kennedy, Mr. Santmyer, and Mr. Wilson are each a 'person' within the meaning of 15 U.S.C. § 1117 because each is a natural person.

93.     AdvisorLaw and Wilson Law are each a 'service mark' within the meaning of 15 U.S.C. § 1117 because each was used by a person to identify and distinguish the services of one person from the services of others and to indicate the source of the services.

**COCCA Definitions**

94.     AdvisorLaw is a 'person' within the meaning of C.R.S. § 18-17-103(4) because it is an entity holding or capable of holding a legal or beneficial interest in property.

95.     Mr. Kennedy and Mr. Santmyer are each a 'person' within the meaning of C.R.S. § 18-17-103(4) because each is an individual holding or capable of holding a legal or beneficial interest in property.

96.     AdvisorLaw is an 'enterprise' within the meaning of C.R.S. § 18-17-103(2) because it is a legal entity.

97.     Mr. Kennedy and Mr. Santmyer are each an 'enterprise' within the meaning of C.R.S. § 18-17-103(2) because each is an individual.

98.     While acting jointly or together, each of the following groups was an 'enterprise' within the meaning of C.R.S. § 18-17-103(2) because each was a group associated in fact:

(a) AdvisorLaw and Mr. Kennedy; (b) AdvisorLaw and Mr. Santmyer; (c) Mr. Kennedy

and Mr. Santmyer; and (d) AdvisorLaw, Mr. Kennedy, and Mr. Santmyer.

99.     Each of the following was an AdvisorLaw agent at all relevant times because there

was an agreement, written or oral, express or implied, between AdvisorLaw and each

individual by which each individual agreed he or she would act for AdvisorLaw: (a) Mr.

Bacher; (b) Mr. Barber; (c) Mr. Kennedy; (d) Mrs. Kennedy; (e) Mr. Santmyer; and (f)

Mr. Sisk.

100.    Each of the following was and is a 'witness' within the meaning of C.R.S. § 18-8-

702(2)(a) because each individual is a natural person who has knowledge of the existence

or nonexistence of facts related to a crime: (a) Mr. Bacher; (b) Mr. Barber; (c) Mr.

Kennedy; (d) Mrs. Kennedy; (e) Mr. Santmyer; and (f) Mr. Sisk.

101.    Each of the following was and is a "witness" within the meaning of C.R.S. § 18-8-

702(2)(e) because each individual is a natural person who reasonable people would

believe is an individual with knowledge of the existence or nonexistence of facts related to

a crime: (a) Mr. Bacher; (b) Mr. Barber; (c) Mr. Kennedy; (d) Mrs. Kennedy; (e) Mr.

Santmyer; and (f) Mr. Sisk.

**CCPA Definitions**

102.    Report 1336305 is an 'advertisement' within the meaning of C.R.S. § 6-1-102(1)

because it was an attempt by publication to induce consumers in the market for services

both AdvisorLaw and Wilson Law offered to hire AdvisorLaw instead of Wilson Law.

103.    AdvisorLaw and Wilson Law are each a 'person' within the meaning of C.R.S. § 6-1-102(6) because each is a commercial entity.

104.    Mr. Kennedy, Mr. Santmyer, and Mr. Wilson are each a 'person' within the meaning of C.R.S. § 6-1-102(6) because each is an individual.

105.    AdvisorLaw and Wilson Law are each a 'service mark' within the meaning of C.R.S. § 6-1-102(11) because each is a mark used to identify services and distinguish them from the services of others.

106.    AdvisorLaw and Wilson Law are each a "trade name" within the meaning of C.R.S. § 6-1-102(13) because each is a name used to identify a business and distinguish it from the business of others.

### FIRST CLAIM FOR RELIEF

### False Advertising under Section 43(a)(1)(B) of the Lanham Act

107.    Mr. Wilson and Wilson Law hereby incorporate all this Complaint's allegations and bring this cause of action against AdvisorLaw and Mr. Kennedy.

108.    AdvisorLaw and Mr. Kennedy made false and derogatory statements of fact about Mr. Wilson's and Wilson Law's professional services and business practices when Mr. Kennedy, acting on behalf and for the benefit of AdvisorLaw, published Report 1336305.

109.    Report 1336305 deceived and had the tendency to deceive consumers and prospective customers who were or could have been in the market for the types of

professional services Mr. Wilson, Wilson Law, AdvisorLaw, Mr. Kennedy, and Mr. Santmyer marketed or sold.

110. Report 1336305 deceived and had the tendency to deceive Xcentric Ventures, LLC; Ripoff Report; and search engine companies who republished the URL or webpage address for Report 1336305 in their search results.

111. The false statements of fact that AdvisorLaw and Mr. Kennedy published about Mr. Wilson and Wilson Law via Report 1336305 influenced, were likely to influence, will influence, and are likely to influence the purchasing decisions of consumers and prospective customers who were or could have been in the market for the types of professional services Mr. Wilson, Wilson Law, AdvisorLaw, Mr. Kennedy, and Mr. Santmyer marketed or sold.

112. Wilson Law received fewer customer inquiries and generated less revenue and profit per month after AdvisorLaw and Mr. Kennedy published Report 1336305 than before AdvisorLaw and Mr. Kennedy published Report 1336305.

113. The false statements of fact that AdvisorLaw and Mr. Kennedy published about Mr. Wilson and Wilson Law via Report 1336305 influenced, were likely to influence, will influence, and are likely to influence the purchasing decisions of Xcentric Ventures, LLC; Ripoff Report; and people who work for search engine companies that indexed and republished the URL or webpage address for Report 1336305.

114.    AdvisorLaw and Mr. Kennedy caused the false and derogatory statements of fact in Report 1336305 to enter interstate commerce because Mr. Kennedy, while acting for the benefit and on behalf of AdvisorLaw, published the statements via the Internet and used connected computer systems that were geographically located in more than one state to publish Report 1336305.

115.    As a direct and proximate result of AdvisorLaw's and Mr. Kennedy's violations of Section 43(a)(1)(B) of the Lanham Act, Mr. Wilson and Wilson Law suffered and will continue to suffer injuries to their reputations, injuries to their brand value or goodwill assets, and other economic and noneconomic injuries.  The economic injuries include, but are not limited to, a decreased return on investment for Mr. Wilson's graduate legal education labor and costs and a decreased return on investment for Wilson Law's startup and business development labor and costs.  Mr. Wilson also suffered and will continue to suffer mental harms, inconveniences, and quality-of-life losses.

116.    Unless AdvisorLaw and Mr. Kennedy are ordered to have the content of Report 1336305 permanently deleted from the Internet or to permanently remove every URL or webpage address for Report 1336305's content from search engine companies' search results, Mr. Wilson and Wilson Law will continue to suffer immediate, substantial, and irreparable injury to their reputations for which there is no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Organized Crime under Section 18-17-104(3) of the COCCA

117.    Mr. Wilson and Wilson Law hereby incorporate all this Complaint's allegations and bring this cause of action against AdvisorLaw and Mr. Kennedy.

118.    AdvisorLaw and Mr. Kennedy knowingly conducted or participated in a pattern of racketeering activity when they, acting in their individual capacities and acting jointly:

    i.     committed an act in Colorado that C.R.S. § 18-5-113(1)(b)(I) prohibits on or about November 2, 2016, by intentionally using a fictitious identity to publish a false and defamatory complaint review of Mr. Wilson and Wilson Law on Ripoff Report's website;

    ii.     committed an act in Colorado that C.R.S. § 18-5-113(1)(b)(II) prohibits on or about November 2, 2016, by using a fictitious identify to unlawfully gain a benefit for themselves and defraud Xcentric Ventures, LLC;

    iii.     committed an act in Colorado that C.R.S. § 18-5.5-102(1)(a) prohibits on or about November 2, 2016, by intentionally violating Ripoff Report's Terms of Service and exceeding their authorized access to Ripoff Report's website;

    iv.     committed an act in Colorado that C.R.S. § 18-5.5-102(1)(b) prohibits on or about November 2, 2016, by accessing Ripoff Report's website with the intent to and for the purpose of exercising a scheme to defraud Xcentric Ventures, LLC;

v.   committed an act in Colorado that C.R.S. § 18-5.5-102(1)(c) prohibits on or about November 2, 2016, by accessing Ripoff Report's computer systems by means of false or fraudulent pretenses, representations, or promises;

vi.   committed an act that 18 U.S.C. § 1343 prohibits on or about November 2, 2016, by transmitting writings between Colorado and other U.S. states via wire communications with Xcentric Ventures, LLC or Ripoff Report with the intent to and for the purpose of exercising a scheme to defraud Xcentric Ventures, LLC or Ripoff Report;

vii.   committed an act in Colorado that C.R.S. § 18-8-703(1)(a) prohibits after November 2, 2016, by offering Mr. Bacher money to:

    i.   falsely testify that Mr. Bacher published Report 1336305 on Ripoff Report's website; and

    ii.   unlawfully withhold testimony that Mr. Kennedy had admitted to Mr. Bacher and other AdvisorLaw agents on several occasions that Mr. Kennedy had published Report 1336305; and

viii.   committed an act in Colorado that C.R.S. § 18-8-707(1)(a) prohibits on several different dates after November 2, 2016, by instructing or encouraging Mr. Bacher, Mr. Barber, Mrs. Kennedy, Mr. Santmyer, and Mr. Sisk to unlawfully withhold testimony about the fact that Mr. Kennedy had admitted to them he had published Report 1336305.

119.    As a direct and proximate result of AdvisorLaw's and Mr. Kennedy's violations of Section 18-17-104(3) of the COCCA, Mr. Wilson and Wilson Law suffered and will continue to suffer injuries to their reputations, injuries to their brand value or goodwill assets, and other economic and noneconomic injuries.  The economic injuries include, but are not limited to, a decreased return on investment for Mr. Wilson's graduate legal education labor and costs and a decreased return on investment for Wilson Law's startup and business development labor and costs.  Mr. Wilson also suffered and will continue to suffer mental harms, inconveniences, and quality-of-life losses.

120.    Unless AdvisorLaw and Mr. Kennedy are ordered to have the content of Report 1336305 permanently deleted from the Internet or to permanently remove every URL or webpage address for Report 1336305's content from search engine companies' search results, Mr. Wilson and Wilson Law will continue to suffer immediate, substantial, and irreparable injury to their reputations for which there is no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### Organized Crime under Section 18-17-104(4) of the COCCA

121.    Mr. Wilson and Wilson Law hereby incorporate all this Complaint's allegations and bring this cause of action against AdvisorLaw and Mr. Kennedy.

122.    In violation of C.R.S. § 18-17-104(4), AdvisorLaw and Mr. Kennedy conspired and endeavored to violate the provisions of C.R.S. § 18-17-104(3) by helping each other to individually or jointly engage in a pattern of racketeering activity.

123.    As a direct and proximate result of AdvisorLaw's and Mr. Kennedy's violations of Section 18-17-104(4) of the COCCA, Mr. Wilson and Wilson Law suffered and will continue to suffer injuries to their reputations, injuries to their brand value or goodwill assets, and other economic and noneconomic injuries.  The economic injuries include, but are not limited to, a decreased return on investment for Mr. Wilson's graduate legal education labor and costs and a decreased return on investment for Wilson Law's startup and business development labor and costs.  Mr. Wilson also suffered and will continue to suffer mental harms, inconveniences, and quality-of-life losses.

124.    Unless AdvisorLaw and Mr. Kennedy are ordered to have the content of Report 1336305 permanently deleted from the Internet or to permanently remove every URL or webpage address for Report 1336305's content from search engine companies' search results, Mr. Wilson and Wilson Law will continue to suffer immediate, substantial, and irreparable injury to their reputations for which there is no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### Organized Crime under Section 18-17-104(3) of the COCCA

125.    Mr. Wilson and Wilson Law hereby incorporate all this Complaint's allegations and bring this cause of action against AdvisorLaw, Mr. Kennedy, and Mr. Santmyer.

126.    AdvisorLaw, Mr. Kennedy, and Mr. Santmyer knowingly conducted or participated in a pattern of racketeering activity when they, acting in their individual capacities and acting jointly, committed acts in Colorado that C.R.S. § 18-8-707(1)(a)

prohibits on multiple dates after November 2, 2016, by encouraging or influencing each other and Mr. Bacher, Mr. Barber, Mrs. Kennedy, and Mr. Sisk to unlawfully withhold testimony that Mr. Kennedy had published Report 1336305 and Mr. Bacher had not.

127.    As a direct and proximate result of AdvisorLaw's, Mr. Kennedy's, and Mr. Santmyer's violations of Section 18-17-104(3) of the COCCA, Mr. Wilson and Wilson Law suffered and will continue to suffer injuries to their reputations, injuries to their brand value or goodwill assets, and other economic and noneconomic injuries.  The economic injuries include, but are not limited to, a decreased return on investment for Mr. Wilson's graduate legal education labor and costs and a decreased return on investment for Wilson Law's startup and business development labor and costs.  Mr. Wilson also suffered and will continue to suffer mental harms, inconveniences, and quality-of-life losses.

## FIFTH CLAIM FOR RELIEF

### Organized Crime under Section 18-17-104(4) of the COCCA

128.    Mr. Wilson and Wilson Law hereby incorporate all this Complaint's allegations and bring this cause of action against AdvisorLaw, Mr. Kennedy, and Mr. Santmyer.

129.    In violation of C.R.S. § 18-17-104(4), AdvisorLaw, Mr. Kennedy, and Mr. Santmyer conspired and endeavored to commit acts the provisions of C.R.S. § 18-17-104(3) prohibit by helping each other engage in a pattern of racketeering activity.

130.    As a direct and proximate result of AdvisorLaw's, Mr. Kennedy's, and Mr.

Santmyer's violations of Section 18-17-104(4) of the COCCA, Mr. Wilson and Wilson

Law suffered and will continue to suffer injuries to their reputations, injuries to their

brand value or goodwill assets, and other economic and noneconomic injuries.  The

economic injuries include, but are not limited to, a decreased return on investment for

Mr. Wilson's graduate legal education labor and costs and a decreased return on

investment for Wilson Law's startup and business development labor and costs.  Mr.

Wilson also suffered and will continue to suffer mental harms, inconveniences, and

quality-of-life losses.

### SIXTH CLAIM FOR RELIEF

### Deceptive Trade Practices under Section 6-1-105(1)(h) and (3) of the CCPA

131.    Mr. Wilson and Wilson Law hereby incorporate all this Complaint's allegations

and bring this cause of action against AdvisorLaw and Mr. Kennedy.

132.    In violation of C.R.S. § 6-1-105(1)(h), AdvisorLaw and Mr. Kennedy knowingly

published disparaging falsehoods about Mr. Wilson and Wilson Law via Report 1336305.

133.    AdvisorLaw and Mr. Kennedy engaged in deceptive trade practices prohibited by

C.R.S. § 6-1-105(3) by making false and disparaging statements about Mr. Wilson and

Wilson Law to Ripoff Report and Xcentric Ventures, LLC.

134.    AdvisorLaw and Mr. Kennedy intentionally engaged in deceptive trade practices prohibited by C.R.S. § 6-1-105(3) by making false and derogatory statements to Mr. Wilson and Wilson Law about the author and publisher of Report 1336305.

135.    AdvisorLaw and Mr. Kennedy intentionally engaged in deceptive trade practices prohibited by C.R.S. § 6-1-105(3) by making false and disparaging statements about Mr. Wilson and Wilson Law to Colorado consumers who used or could have used the Internet to search for companies that provided the services AdvisorLaw, Mr. Kennedy, Mr. Santmyer, Wilson Law, or Mr. Wilson provided.

136.    AdvisorLaw and Mr. Kennedy intentionally engaged in deceptive trade practices that C.R.S. § 6-1-105 prohibits with the intent to injure Mr. Wilson and Wilson Law and to destroy or substantially lessen competition in Colorado.

137.    The deceptive trade practices in which AdvisorLaw and Mr. Kennedy intentionally engaged occurred while AdvisorLaw, Mr. Kennedy, Mr. Santmyer, Wilson Law, and Mr. Wilson were engaging in their business or occupations in Colorado.

138.    The deceptive trade practices in which AdvisorLaw and Mr. Kennedy intentionally engaged impacted all Colorado consumers who purchased or could have purchased the professional services AdvisorLaw, Mr. Kennedy, Mr. Santmyer, Wilson Law, or Mr. Wilson provided.

139.    The number of Colorado consumers who purchased or could have purchased the professional services AdvisorLaw, Mr. Kennedy, Mr. Santmyer, Wilson Law, or Mr.

Wilson provided after searching the Internet for providers of those services in Colorado is greater than ten thousand.

140.    As a direct and proximate result of AdvisorLaw's and Mr. Kennedy's violations of C.R.S. § 6-1-105, Mr. Wilson and Wilson Law suffered and will continue to suffer injuries to their reputations, brand value, or goodwill assets and other economic and noneconomic injuries.  The economic injuries include, but are not limited to, a decreased return on investment for Mr. Wilson's graduate legal education labor and costs and a decreased return on investment for Wilson Law's startup and business development labor and costs.

## SEVENTH CLAIM FOR RELIEF

### Defamation per se in a Matter Where the Plaintiffs are Private Persons

141.    Mr. Wilson and Wilson Law hereby incorporate all this Complaint's allegations and bring this cause of action against AdvisorLaw and Mr. Kennedy.

142.    Mr. Wilson was acting for the benefit of, and with the knowledge and authority of AdvisorLaw when he published Report 1336305 on November 2, 2016.

143.    When he published Report 1336305, Mr. Kennedy falsely alleged Mr. Wilson or Wilson Law:

     i.     lied to a client named Patrick Erickson "with no reservations;"

     ii.     made claims to a client named Patrick Erickson about their experience, affiliations, credentials, or acumen that were "complete fabrications;"

     iii.     conned a client named Patrick Erickson into hiring them;

    iv.   falsely portrayed themselves as experts with "vast experience;"

    v.   refused to admit they lied to a client named Patrick Erickson after a private

        investigator had confirmed their lies and a client named Patrick Erickson

        had paid them $15,000; and

    vi.   told a client named Patrick Erickson they were "very good at hiding from

        judgments and collections."

144.   These allegations were false when published and are false now.

145.   These allegations were not opinions because they entailed false assertions of fact,

assertions that are capable of being proven false.

146.   AdvisorLaw and Mr. Kennedy knew the false and disparaging statements were

false when they published them.

147.   AdvisorLaw's and Mr. Kennedy's primary objectives were to

    i.   deceive any consumer who might consider hiring Mr. Wilson or Wilson

        Law, and increase the likelihood the consumer would hire AdvisorLaw

        instead of Mr. Wilson or Wilson Law;

    ii.   help AdvisorLaw gain an unfair competitive advantage over Mr. Wilson and

        Wilson Law;

    iii.   compel Mr. Wilson and Wilson Law to spend money mitigating the harms;

    iv.   decrease Mr. Wilson's and Wilson Law's revenues and profits; and

    v.   decrease the values of Mr. Wilson's and Wilson Law's reputations.

148.     As a direct and proximate result of Mr. Kennedy's and AdvisorLaw's publication

of the false and defamatory statements about Mr. Wilson's and Wilson Law's

professional conduct or competence, Mr. Wilson and Wilson Law suffered and will

continue to suffer economic injuries, such as the decreased values of their reputations,

brands, and goodwill assets.  The economic injuries include, but are not limited to, a

decreased return on investment for Mr. Wilson's graduate legal education labor and costs

and a decreased return on investment for Wilson Law's startup and business

development labor and costs.  Mr. Wilson also suffered and will continue to suffer mental

harms and quality-of-life losses.

## EIGHTH CLAIM FOR RELIEF

### Civil Conspiracy

149.     Mr. Wilson and Wilson Law hereby incorporate all this Complaint's allegations

and bring this cause of action against AdvisorLaw, Mr. Kennedy, and Mr. Santmyer.

150.     Under C.R.S. § 18-8-115, "It is the duty of every corporation or person who has

reasonable grounds to believe that a crime has been committed to report promptly the

suspected crime to law enforcement authorities."

151.     AdvisorLaw, Mr. Kennedy, and Mr. Santmyer agreed to influence people who

worked on behalf and for the benefit of AdvisorLaw to help AdvisorLaw and Mr.

Kennedy conceal from third parties the facts that AdvisorLaw and Mr. Kennedy had

published Report 1336305, and in so doing, had engaged in conduct that Colorado and federal criminal statutes proscribe.

152.    AdvisorLaw, Mr. Kennedy, and Mr. Santmyer engaged in this civil conspiracy to persuade people who worked on behalf and for the benefit of AdvisorLaw not to comply with their legal duties under C.R.S. § 18-8-115.

153.    AdvisorLaw, Mr. Kennedy, and Mr. Santmyer engaged in this civil conspiracy to injure Mr. Wilson and Wilson Law.

154.    AdvisorLaw, Mr. Kennedy, and Mr. Santmyer engaged in this civil conspiracy to deceive Ripoff Report and Xcentric Ventures, LLC into allowing Report 1336305 to remain online and unedited even though AdvisorLaw, Mr. Kennedy, and Mr. Santmyer knew Report 1336305 (a) was published illegally, (b) contained injurious falsehoods about Mr. Wilson and Wilson Law, and (c) violated Ripoff Report's Terms of Service.

155.    AdvisorLaw, Mr. Kennedy, and Mr. Santmyer succeeded in their efforts to influence people who worked on behalf and for the benefit of AdvisorLaw to conceal from Ripoff Report and Xcentric ventures, LLC the fact that AdvisorLaw and Mr. Kennedy had published Report 1336305 illegally and unlawfully.

156.    AdvisorLaw, Mr. Kennedy, and Mr. Santmyer succeeded in their efforts to influence people who worked on behalf and for the benefit of AdvisorLaw not to comply with their legal duties under C.R.S. § 18-8-115.

157.    As a direct result of AdvisorLaw's, Mr. Kennedy's, and Mr. Santmyer's

misconduct, no one who worked on behalf and for the benefit of AdvisorLaw reported

AdvisorLaw's and Mr. Kennedy's illegal or unlawful conduct to Ripoff Report; Xcentric

Ventures, LLC; or a law enforcement authority despite having a duty to do so.

158.    Because no one who worked on behalf and for the benefit of AdvisorLaw contacted

Ripoff Report or Xcentric Ventures, LLC to inform it that Mr. Kennedy, while acting on

behalf and for the benefit of AdvisorLaw, had illegally and unlawfully published false and

derogatory statements about Mr. Wilson and Wilson Law in Report 1336305, neither

Ripoff Report nor Xcentric Ventures, LLC took any steps to delete or edit the webpage

for Report 1336305.

159.    Ripoff Report or Xcentric Ventures, LLC would have edited or deleted the

webpage for Report 1336305 if AdvisorLaw convinced it that Mr. Kennedy, while acting

on behalf and for the benefit of AdvisorLaw, had illegally and unlawfully published false

and derogatory statements about Mr. Wilson and Wilson Law in Report 1336305.

160.    A law enforcement authority would have contacted Ripoff Report; Xcentric

Ventures, LLC; or search engine companies had people who worked on behalf and for the

benefit of AdvisorLaw contacted the authorities and reported AdvisorLaw's and Mr.

Kennedy's illegal conduct.

161.    Had a law enforcement authority contacted Ripoff Report or Xcentric Ventures,

LLC to inform it AdvisorLaw and Mr. Kennedy had illegally published Report 1336305,

Ripoff Report or Xcentric Ventures, LLC would have edited or deleted Report 1336305's webpage.

162.    Because neither Ripoff Report nor Xcentric Ventures, LLC edited or deleted the webpage for Report 1336305, search engine companies indexed the Report 1336305 webpage and published Report 1336305 webpage's URL or webpage address in their search results.

163.    Because search engine companies published the URL or webpage address for Report 1336305's webpage, more consumers read the injurious falsehoods AdvisorLaw and Mr. Kennedy published about Mr. Wilson and Wilson Law than would have read them had AdvisorLaw and Mr. Kennedy never published Report 1336305.

164.    Because more consumers read the injurious falsehoods than would have read them had AdvisorLaw and Mr. Kennedy never published Report 1336305, Mr. Wilson and Wilson Law received fewer customer inquiries and generated less revenue and profit per month after AdvisorLaw and Mr. Kennedy published Report 1336305 than before AdvisorLaw and Mr. Kennedy published Report 1336305.

165.    As a direct and proximate result of Mr. Kennedy's and AdvisorLaw's civil conspiracy, Mr. Wilson and Wilson Law suffered and will continue to suffer economic injuries, such as the decreased values of their reputations, brands, and goodwill assets. The economic injuries include, but are not limited to, a decreased return on investment for Mr. Wilson's graduate legal education labor and costs and a decreased return on

investment for Wilson Law's startup and business development labor and costs.  Mr.

Wilson also suffered and will continue to suffer mental harms and quality-of-life losses.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Wilson and Wilson Law pray for the following relief.

### Relief Requested under the Lanham Act

A. Pursuant to Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)), Mr. Wilson
and Wilson Law request injunctive relief in the form of an order enjoining
AdvisorLaw and Mr. Kennedy from publishing, causing to be published, or aiding
or abetting the publication of false and defamatory statements about Mr. Wilson or
Wilson Law that are similar to or the same as the false and derogatory statements
AdvisorLaw and Mr. Kennedy published via Report 1336305.

B. Pursuant to Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)), Mr. Wilson
and Wilson Law request injunctive relief in the form of an order requiring
AdvisorLaw and Mr. Kennedy to (a) have the content of Report 1336305
permanently deleted from the Internet or (b) permanently remove from Internet
search engine companies' search results every URL or webpage address directing
Internet users to Report 1336305's content.

C. Pursuant to Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)), Mr. Wilson
and Wilson Law request injunctive relief in the form of an order enjoining third

parties from republishing, causing to be republished, or advertising the URL or webpage address for Report 1336305.

D.  Pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), Mr. Wilson and Wilson Law request compensatory relief in the form of:

a.  all revenues AdvisorLaw or Mr. Kennedy obtained due to Report 1336305's publication;

b.  all revenues AdvisorLaw or Mr. Kennedy obtained because search engine companies republished the URL or webpage address for Report 1336305;

c.  all costs Mr. Wilson or Wilson Law incurred for this action;

d.  all attorneys' fees Mr. Wilson and Wilson Law incurred for this action;

e.  all damages Mr. Wilson or Wilson Law sustained due to Report 1336305's publication;

f.  all damages Mr. Wilson or Wilson Law sustained because search engine companies republished the URL or webpage address for Report 1336305; and

g.  treble Mr. Wilson's and Wilson Law's damages.

## Relief Requested under the COCCA

E.  Pursuant to C.R.S. § 18-17-106(6), Mr. Wilson and Wilson Law request injunctive relief in the form of an order enjoining AdvisorLaw and Mr. Kennedy from publishing, causing to be published, or aiding or abetting the publication of false

and defamatory statements about Mr. Wilson or Wilson Law while impersonating others or committing computer crimes.

F.  Pursuant to C.R.S. § 18-17-106(6), Mr. Wilson and Wilson Law request injunctive relief in the form of an order requiring AdvisorLaw and Mr. Kennedy to (a) have the content of Report 1336305 permanently deleted from the Internet or (b) permanently remove from Internet search engine companies' search results every URL or webpage address directing Internet users to Report 1336305's content.

G.  Pursuant to C.R.S. § 18-8-115, Mr. Wilson and Wilson Law request injunctive relief in the form of an order requiring AdvisorLaw to report Mr. Kennedy's and Mr. Santmyer's violations of Colorado's criminal statutes to a law enforcement authority in Colorado.

H.  Pursuant to C.R.S. § 18-17-106(7), Mr. Wilson and Wilson Law request compensatory relief in the form of their actual and special damages, treble damages, reasonable attorneys' fees, and the costs of this action.

## Relief Requested under the CCPA

I.  Mr. Wilson and Wilson Law request injunctive relief in the form of an order requiring AdvisorLaw to report its violations of the Colorado Consumer Protection Act to the Broomfield County District Attorney or the Colorado Attorney General.

J. Pursuant to C.R.S. § 6-1-113(2)(a), Mr. Wilson and Wilson Law request compensatory relief in the form of their actual and special damages, treble damages, reasonable attorneys' fees, and the costs of this action.

### Relief Requested for Defamation and Civil Conspiracy

K. Mr. Wilson and Wilson Law request injunctive relief in the form of an order requiring AdvisorLaw and Mr. Kennedy to (a) have the content of Report 1336305 permanently deleted from the Internet or (b) permanently remove from Internet search engine companies' search results every URL or webpage address directing Internet users to Report 1336305's content.

L. Mr. Wilson and Wilson Law request injunctive relief in the form of an order enjoining AdvisorLaw and Mr. Kennedy from publishing, causing to be published, or aiding or abetting the publication of false and defamatory statements about Mr. Wilson or Wilson Law that are similar to or the same as the false and derogatory statements AdvisorLaw and Mr. Kennedy published via Report 1336305.

M. Mr. Wilson and Wilson Law request compensatory relief in the form of an order requiring AdvisorLaw and Mr. Kennedy to pay Mr. Wilson and Wilson Law actual and special damages arising from their defamation of Mr. Wilson and Wilson Law and the costs of this action.

## Other Requested Relief

N.  Mr. Wilson and Wilson Law request all prejudgment and post-judgment interest

the law allows.

Dated June 22, 2017

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.
*s/ Alexandra Tracy-Ramirez*
Alexandra Tracy-Ramirez
HopkinsWay PLLC
7900 E. Union Ave., Ste. 1100
Denver, CO 80237
(720) 262-5545 tel
(720) 262-5546 fax
Email: ehopkins@hopkinsway.com
Email: atracyramirez@hopkinsway.com
Attorneys for Plaintiffs