IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01525-MSK-CBS

MARK WILSON, an individual, and WILSON LAW LTD., a Colorado limited liability company,

    Plaintiffs,

v.

ADVISORLAW LLC, a Colorado limited liability company, DOCHTOR DANIEL KENNEDY, an individual, and STACY SANTMYER, an individual.

    Defendants.

---

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

Plaintiffs Mark Wilson and Wilson Law Ltd. ask the Court to deny Defendants' Motion to Dismiss **(# 18)**. The First Amended Complaint (FAC) **(# 11)** alleges all the required elements of their claims for false advertising under the Section 43(a)(1)(B) of the Lanham Act, racketeering under the Colorado Organized Crime Control Act (COCCA), and deceptive trade practices under the Colorado Consumer Protection Act (CCPA).

## I.    LEGAL STANDARDS

### A. Plausibility Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). "In testing the legal sufficiency of the complaint, the Court 'must

1

accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.'" *PayoutOne v. Coral Mortgage Bankers*, 602 F. Supp. 2d 1219, 1222–23 (D. Colo. 2009) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

Disputes on the ultimate credibility of the allegations and facts are improper at this point. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) ("This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged.").

"'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004)).

The plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of wrongdoing. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### B. Motion for Judgment on the Pleadings

Because Defendants filed their Motion to Dismiss **(#18)** after, but nearly at the same time as their Answer **(#17)**, their Motion may be treated as one for judgment on the pleadings and their Answer may be considered in assessing the sufficiency of Plaintiffs'

claims.  *See Jacobsen v. Deseret Book Co.* 287 F.3d 936, 941 (10th Cir.2002) (citing Fed.R.Civ.P. 12(c), (h)(2)); *see also Zmelik v. Neways, Inc.*, 2:06-CV-136 TS, 2007 WL 446045, at *1 (D. Utah Feb. 7, 2007) ("When…the defendant files its motion…under Rule 12(b)(6) after, or simultaneously with, filing their Answer, the motion should generally be treated as a motion for judgment on the pleadings.").

In considering a motion for judgment on the pleadings, "[t]he Court may consider the Complaint, any material that is attached to the Complaint, and the Answer in its review of the motion." *UNUM Life Insur. Co. v. Wolf*, CIV.A. 07-CV-00071-R, 2008 WL 356540 at *3 (D. Colo. Jan. 22, 2008) (citing *Park Univ. Enterprises, Inc. v. Am. Cas. Co. Of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006); *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002)).

The analyses of motions under Rule 12(b)(6) and Rule 12(c) are substantially the same, and factual conflicts, even between the Answer and the Complaint must be resolved in the Plaintiffs' favor. *UNUM Life Insur. Co.*, 2008 WL 356540 at *3 (citing *Qwest*, 208 F.3d at 291). "Uncontested allegations to which the other party had an opportunity to respond are taken as true." *Id.*

## II. CLAIMS

### A. The First Amended Complaint proves the necessary elements for a Lanham Act false advertising claim.

1. <u>Commercial Advertising</u>

The Plaintiffs agree that claims under 15 U.S.C. § 1125(a) must allege actionable speech constitutes commercial advertising.  The elements of commercial advertising, as Defendants outline in their Motion to Dismiss **(#18** at 4-5**)** are: (a) commercial speech; (b) by a defendant who is in commercial competition with plaintiff; (c) for the purpose of influencing consumers to buy defendant's goods or services; and (d) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.  *Id.* citing *Proctor & Gamble v. Haugen*, 222 F.3d 1262, 1273-1274 (10th Cir. 2000).

The FAC alleges the review about the Plaintiffs constituted a commercial advertising: "Although it is not a televised radio commercial, Report 1336305 is a commercial advertisement or promotion." **(#11** at ¶ 123**)**.  The FAC alleges Report 1336305 "is a commercial advertisement" in part because "its purpose is to persuade consumers who…were considering purchasing professional services from Mr. Wilson and Wilson Law to instead purchase the same or similar professional services from AdvisorLaw." *Id.* at ¶ 124.

It further alleges that in publishing the report "to a public forum used by consumers to select the types of services AdvisorLaw, Mr. Kennedy, Mr. Wilson, and Wilson Law provide, Mr. Kennedy acted with an economic motive, in pursuit of his and AdvisorLaw's commercial and economic interests." *Id.* at ¶ 132.

### a. *Commercial speech*

Defendants challenge the commercial nature of the speech by claiming the report they published "cannot legally be considered a commercial advertisement…because it would fail the requirements of being commercial speech" and arguing the report "does not make any direct or indirect reference to the Defendants." **(#18** at 8**)**. Plaintiffs dispute that "direct or indirect" reference is a required element of either commercial speech or commercial advertising.

 "While commercial speech jurisprudence is not remarkable for its clarity, the Supreme Court has enunciated certain principles with some consistency in drawing the common-sense distinction between speech proposing a commercial transaction … and other varieties of speech." *Proctor & Gamble*, 222 F.3d at 1274 (quoting *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 455–56 (1978); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771 n. 24 (1976)) (internal quotations omitted).

Under *Proctor*, speech is not automatically "commercial speech merely because…it is contained in an advertisement, made with an economic motive, or refers to a specific product, although the combination of those characteristics strongly supports classification as commercial speech." *Id.* at 1274.

The absence of a direct mention of Defendants' own goods and services in a publication disparaging a competitor cannot shield Defendants from liability when other

factors weigh heavily in favor of it. *See Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1184-85 (D. Colo. 2015).

In *General Steel*, this Court examined a case involving competing Lanham Act claims between competitors who were once employer and employee. There, the former employee, doing business as Armstrong Steel Corporation, "published false and defamatory material directed at General and its employees." *Id*. at 1164.

In its defense, Armstrong argued the disparaging content it created was non-commercial "gripe site" or "complaint" site content and therefore non-commercial speech. *Id*. at 1184. This Court reasoned the "argument might have merit if Armstrong were not a direct competitor of General" because in that situation, "Armstrong's criticism of General would be divorced from the goods and services it offered for sale and unmotivated by any commercial interest." *Id*. But this Court determined "Armstrong's strong commercial interest in diverting customers away from General (in the hopes that some of them might instead purchase a similar product from Armstrong) and its specific reference to General's products…are sufficient to subject Armstrong to liability." *Id*.

Here, Defendants' publication cannot be divorced from Defendants' commercial interests and their desire to preserve their own client base by diverting clients and potential clients away from the Plaintiffs. There will be a more in-depth examination of the evidence at the summary judgment stage, but at this stage, the commercial nature of the speech has been sufficiently alleged. As the FAC explains, "By publishing Report

6

1336305 via a public forum that is widely known as one many consumers review before doing business…Mr. Kennedy acted with an economic motive, in pursuit of his and AdvisorLaw's commercial and economic interests." **(#11** at ¶ 49**)**.

   b. *Commercial competition*

The First Amended Complaint adequately alleges the parties are in commercial competition with one another. The FAC's first allegation **(#11** at ¶ 1**)** alleges: "AdvisorLaw, led by Mr. Kennedy, and Wilson Law, led by Mr. Wilson, became business competitors in Colorado after AdvisorLaw chose to terminate its business relationships with Mr. Wilson and Wilson Law on or about October 1, 2016." *See also id.* at ¶ 119. Defendants have admitted this allegation. **(#17** at ¶ 1**)**.

The FAC also alleges additional facts in support of the parties' competitive relationship that must be presumed true.

- Mr. Kennedy published the fake review to disparage Mr. Wilson and Wilson Law, prevent them from competing fairly against AdvisorLaw, and influence consumers' purchasing decisions by deceptive means. *Id.* at ¶ 3.
- Mr. Kennedy, using his AdvisorLaw email…sent Mr. Wilson an email that stated: "There's an issue that recently came to my attention of you competing with my business…" *Id.* at ¶ 33.[1]
- "Mr. Wilson sent Mr. Kennedy a response email that stated…I have my company, my livelihood, and yes, among other practice areas, I suppose a part of what we offer will compete with your business." *Id.* at ¶ 34.

---

[1] Defendants admitted this allegation. **(#17** at ¶ 33**)**.

- "Mr. Kennedy, using his AdvisorLaw email address, sent Mr. Wilson a reply email that stated…You're trying to steal business, you've stolen my work…You have chosen to compete with me on something that I brought you into as a friend." *Id.* at 35.[2]
- "Mr. Kennedy wanted to injure Mr. Wilson and Wilson Law for competing against AdvisorLaw." *Id.* at 36.
- "When Mr. Kennedy published Report 1336305, he published it…to help AdvisorLaw compete against Mr. Wilson and Wilson Law in the same market where AdvisorLaw, Mr. Wilson, and Wilson Law market and sell the same or similar professional services…to increase the likelihood that consumers searching for firms who provide the professional services [the parties provide] would buy those services from AdvisorLaw… or to obtain a larger share of the market" the parties operate in. *Id.* at 51.
- "AdvisorLaw markets and sells professional services in a market for which [Plaintiffs] are among its few competitors." *Id.* at 121.

The FAC plausibly alleges the parties were commercial competitors.

### c. Influence

The FAC plausibly alleges Defendants made their actionable statements about the Plaintiffs for the purpose of improperly influencing consumers. *See Gen. Steel Domestic*, 129 F. Supp. 3d at 1173.

In *General Steel*, this Court found General Steel's arguments it had not published content "for the purposes of influencing consumers" or for "human consumption" unpersuasive, in part because in many instances, "the authors" of the speech in question "purposefully created materials that were intended to appear as legitimate news articles,

---

[2] Defendants admitted this allegation. **(# 17 at ¶ 35)**.

reports, or testimonials about General." *Id*. This Court determined "[t]he ultimate purpose of the testimonials was to influence the algorithms to reflect the quantity and quality of favorable comments for the benefit of the ultimate consumer" and concluded such conduct was "'promotional' information" that "could be 'advertising' sufficient to support a Lanham Act claim." *Id*.

Here, the Plaintiffs allege Defendants engaged in similar tactics as General Steel, but with an intention to create negative, rather than "positive associations" (*id*.) between the Plaintiffs and the services both parties provide in the same market.

The FAC alleges Mr. Kennedy, acting on behalf of AdvisorLaw, "published the fake review to disparage Mr. Wilson and Wilson Law, prevent them from fairly competing against AdvisorLaw, and influence consumers' purchasing decisions by deceptive means." **(# 11 at ¶ 3)**.

The FAC also alleges additional factual allegations that Defendants published their information to influence consumers.

- Mr. Kennedy published Report 1336305 to influence consumers' purchasing decisions, to increase the number of consumers who would hire Mr. Kennedy and AdvisorLaw for the same or similar professional services that Mr. Wilson and Wilson Law marketed and sold instead of hiring Mr. Wilson and Wilson Law. *Id*. at ¶ 50.
- When Mr. Kennedy published Report 1336305, he published it… to increase the influence the AdvisorLaw marketing website, www.advisorlawyer.com, had on the decisions of consumers in the same market where AdvisorLaw, Mr. Wilson, and Wilson Law market and sell the same or similar professional services…to decrease the

influence the Wilson Law marketing website, www.wilsonlawltd.com, had on the decisions of consumers in the same…or…to increase the likelihood that consumers searching for firms who provide the professional services AdvisorLaw, Mr. Wilson, and Wilson Law provide would buy those services from AdvisorLaw instead of Mr. Wilson or Wilson Law. *Id.* at ¶ 51.

- The false statements of fact that AdvisorLaw and Mr. Kennedy published about Mr. Wilson and Wilson Law via Report 1336305 influenced, were likely to influence, will influence, and are likely to influence the purchasing decisions of consumers and prospective customers who were or could have been in the market for the types of professional services Mr. Wilson, Wilson Law, AdvisorLaw, Mr. Kennedy, and Mr. Santmyer marketed or sold. *Id.* at 145.

- Wilson Law received fewer customer inquiries and generated less revenue and profit per month after AdvisorLaw and Mr. Kennedy published Report 1336305 than before AdvisorLaw and Mr. Kennedy published Report 1336305. *Id.* at 147.

The FAC plausibly establishes Defendants published their negative review of Mr. Wilson and his firm to influence consumers.

   d. Dissemination

The FAC also alleges Defendants sufficiently disseminated their actionable statements such that the publication constitutes advertising or promotion within the industry in which the parties are involved.

There is no set number that determines whether material has been sufficiently disseminated, but "a dissemination of information must reach some numerically-significant quantity of actual or potential customers of the parties' products." *Gen. Steel Domestic Sales, LLC*, 129 F. Supp. 3d at 1175.

Unlike the authors in *General Steel,* who claimed they only intended to influence algorithms (129 F. Supp. 3d at 1172-73), AdvisorLaw and Mr. Kennedy deliberately published the fake review to one of the most popular websites "for publishing information about companies and individuals who engage in commercial activities" **(# 11 at ¶ 39)** with every intention to reach a large, targeted audience.

The FAC alleges people such as Mr. Kennedy "who publish disparaging information about attorneys and law firms via Ripoff Report's website do so because they want to widely and publicly disseminate information to consumers who are considering purchasing the professional services the attorneys or law firms market or sell." *Id.* at ¶ 43. It also alleges Ripoff Report "widely and publicly disseminates information to consumers who are considering purchasing the types of professional services AdvisorLaw, Mr. Kennedy, Mr. Wilson, and Wilson Law market and sell in Colorado" and that such consumers both "consider and rely on the information contained in Ripoff Report complaints." *Id.* at ¶¶ 44-45.

Defendants' publication, Ripoff Report 1336305, reached "a vast, online audience where thousands of consumers across Colorado and the nation can view the report." **(# 11 at ¶ 138)**. The FAC alleges "[a]t least thousands of consumers have viewed Report 1336305." *Id.* at ¶ 139. But, as the FAC explains, "The exact number cannot be determined without discovery and expert analysis because Ripoff Report does not publicly display statistics on the number of visitors each unique report receives." *Id.* at ¶ 140.

However, the report "appears among the top results in search engine results pages in response to a query of" the terms "Mark Wilson," "Wilson Law," and other related terms. *Id.* at ¶ 141. The FAC alleges that the publication's "prominence in search engine results pages makes it more likely that consumers will see the Report and the statements it contains." *Id.* at 142. It also alleges the publication reached and deceived "consumers and prospective customers who were or could have been in the market for the types of professional services Mr. Wilson, Wilson Law, AdvisorLaw, Mr. Kennedy, and Mr. Santmyer marketed or sold." *Id.* at 143.

The FAC sufficiently alleges the actionable statements reached enough consumers to constitute advertising or promotion.

2. Confusion

A false advertising claim under the Lanham Act can be sustained by a showing there was a "false or misleading description of fact, or false or misleading representation of fact, which…in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. *Zoller Laboratories, LLC. v. NBTY, Inc.*, 111 Fed. Appx. 978, 982 (10th Cir. 2004) (internal citations and quotation omitted).

Defendants argue the Plaintiffs' Lanham Act claim is insufficient because it does not allege "how consumers would confuse the two companies" involved in this case. **(#18** at 10 § C3**).**

A false advertising plaintiff does not have to show a defendant's content confused consumers' ability to distinguish between two companies or products. Rather, "[t]o demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Zoller*, 111 Fed. Appx. at 982 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

Defendants' publication alleges Mr. Wilson or Wilson Law lied to a client named Patrick Erickson; made false claims about credentials and experience; conned the client into hiring them; falsely portrayed themselves as experienced experts; refused to admit to lying after lies were exposed; and told the client they were "very good at hiding from judgments and collections." **(# 11 at ¶ 178)**.

The FAC alleges Mr. Wilson and Wilson Law do not have and have not had a client named Patrick Erickson and alleges that each actionable statement in Defendants' publication is false. *Id*. at 179. The FAC alleges Mr. Kennedy "impersonated a fictitious person named Patrick Erickson" and published the various "false and defamatory statements about Mr. Wilson and Wilson Law on the Ripoff Report website." *Id*. at ¶ 2. It further alleges Mr. Kennedy admitted to others he had published the fake review. *Id*. at 3.

The FAC's allegations along with Jason Bacher's Affidavit (**#11-1**) prove the literal falsity of the fake review's statements. Accordingly, the FAC does not need to allege the review is likely to cause confusion. *See Zoller*, 111 Fed. Appx. at 982 (quoting *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.,* 131 F.3d 430, 434 (4th Cir.1997) ("If the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public.")).

### III. CONCLUSION

The Plaintiffs pleaded legally sufficient claims for relief as evidenced by their FAC and Defendants' admitted facts. Defendants' Motion to Dismiss should be denied.

Dated August 15, 2017
*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.
*s/ Alexandra Tracy-Ramirez*
Alexandra Tracy-Ramirez
HopkinsWay PLLC
7900 E. Union Ave., Ste. 1100
Denver, CO 80237
(720) 262-5545 tel
(720) 262-5546 fax
Email: ehopkins@hopkinsway.com
Email: atracyramirez@hopkinsway.com
*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of filing to the following recipients:

Gregory R. Creer
6950 E Belleview Ave, Suite 103
Greenwood Village, CO 80111
greg@bickfordlegal.com

s/Alexandra Tracy-Ramirez
Alexandra Tracy-Ramirez
HopkinsWay PLLC
7900 E. Union Ave., Ste. 1100
Denver, CO 80237
(720) 262-5545 tel
(720) 262-5546 fax
Email: atracyramirez@hopkinsway.com
*Attorney for Plaintiffs*