# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17 cv 01525

MARK WILSON, an individual, and WILSON LAW LTD, a Colorado limited liability company,

       Plaintiffs,

v.

ADVISORLAW LLC, a Colorado limited liability company, DOCHTOR DANIEL KENNEDY, an individual, and STACY SANTMYER, an individual.

       Defendants.

---

## AMENDED ANSWER AND COUNTERCLAIMS

---

Defendants, Advisor Law LLC, Dochtor Daniel Kennedy, and Stacy Santmyer, by and through their undersigned attorney, and hereby answer the Amended Complaint as follows, subject to their pending Motion to Dismiss:

## PARTIES, JURISDICTION, AND VENUE

1.     Admitted.

2.     Admitted in part and denied in part. It is admitted that on November 2, 2016, Mr. Kennedy informed Mr. Wilson that it had come to his attention that Wilson Law was competing against Advisor Law. All other allegations are denied.

3.     Denied.

4.     Denied

5.     Denied.

6.     Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Statements in this paragraph regarding the claims being brought in the complaint for which no response is required. To the extent that a response is required, such is denied.

13.     Denied. The court lacks jurisdiction under 20 USC § 1338(a) because Plaintiffs have failed to properly allege an actionable complaint for an issue of federal law.

14.     Denied. The court does not have supplemental jurisdiction under 20 USC § 1367(a) because the other claims are not related to an issue for with the Court has original jurisdiction.

15.     Admitted subject to a determination of the Court's subject matter jurisdiction.

## FACTS

16.     Admitted.

17.     Admitted.

18.     Denied. Although originally intended as a law firm, Advisor Law LLC only provides regulatory representation for FINRA Licensed Professionals and therefore, does not claim to be a law firm.

19.     Admitted.

20.     Admitted.

21.     Denied. Although originally intended as a law firm, Advisor Law LLC only provides regulatory representation for FINRA Licensed Professionals and therefore, does not claim to be a law firm.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Denied in part. Mr. Wilson did not provide work for AdvisorLaw LLC until May 23, 2016.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted.

32.     Admitted.

33.     Admitted.

34.     Admitted as to the fact that the email was sent by Mr. Wilson to Mr. Kennedy but not as to the truth or falsity of the contents of the email.

35.     Admitted.

36.     Denied.

37.     Denied.

38.     Denied.

39. Defendants have insufficient information to either admit or deny this allegation and so such is denied.

40. Defendants have insufficient information to either admit or deny this allegation and so such is denied.

41. Defendants have insufficient information to either admit or deny this allegation and so such is denied.

42. Defendants have insufficient information to either admit or deny this allegation and so such is denied.

43. Defendants have insufficient information to either admit or deny this allegation and so such is denied.

44. Defendants have insufficient information to either admit or deny this allegation and so such is denied.

45. Defendants have insufficient information to either admit or deny this allegation and so such is denied.

46. Denied.

47. Plaintiff's Exhibit 3 is a written document, the content of which speaks for itself. Defendants deny any remaining allegations contained in paragraph 47 of Plaintiff's Complaint.

48. Denied

49. Denied.

50. Denied.

51. Denied.

52.    Plaintiff's Exhibit 3 is a written document, the content of which speaks for itself. Defendants deny any remaining allegations contained in paragraph 52 of Plaintiff's Complaint.

53.    Admitted.

54.    Denied.

55.    Makes a conclusion of law for which no response is required. To the extent that a response is required, such is denied.

56.    Defendants have insufficient information to either admit or deny this allegation and so such is denied.

57.    Denied.

58.    Denied.

59.    Denied.

60.    Denied.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

71.     Denied.

72.     Admitted in part. Mr. Bacher was a contractor for AdvisorLaw LLC and now no longer provides any services for AdvisorLaw LLC.

73.     Admitted.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Defendants have no knowledge of when Plaintiffs first discovered Report 1336305 had been published online and that its URL or webpage address could be found via search engine companies' search results. To the extent a response is required, such is denied.

81.     Defendants have no knowledge of Plaintiffs' suspicions. To the extent a response is required, such is denied.

82.     Admitted.

83.     Defendants admit that Mr. Kennedy denied having any knowledge of Report 1336305's publication or author but deny that this was a false statement.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Admitted. Such email was sent with the intention of helping Mr. Wilson remove Report

        1336305 but denies the inference that Mr. Kennedy published Report 1336305 because

        he was trying to help Mr. Wilson.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Admitted.

93.     Admitted as to stating that Mr. Bacher had written and published Report 13363305 but

        denied as to such statements being a lie.

94.     Admitted.

95.     Admitted.

96.     Admitted.

97.     Denied.

98.     Admitted. Mr. Creer does in fact represent Defendants in this matter.

99.     Admitted.

100.    Admitted.

101.    Denied.

102.    Admitted.

103.    Admitted.

104.    Admitted.

105.    Admitted.

106.    Admitted.

107.   Admitted.

108.   Admitted.

109.   Admitted.

110.   Admitted as to Mr. Barber, Mr. Kennedy, Mr. Santmyer and Mr. Sisk. Denied as to Mr. Bacher.

111.   Admitted.

112.   Admitted.

113.   Denied.

114.   Admitted.

115.   Admitted.

116.   Admitted.

117.   Admitted.

## FIRST CLAIM FOR RELIEF

118.   Defendants hereby incorporate all prior responses in this Answer.

119.   Denied.

120.   Denied.

121.   Denied.

122.   Denied.

123.   Denied.

124.   Denied.

125.   Denied.

126.    Plaintiff's Exhibit 3 is a written document, the content of which speaks for itself. Defendants deny any remaining allegations contained in paragraph 126 of Plaintiff's Complaint.

127.    Defendants have insufficient information to either admit or deny this allegation and so such is denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied

132.    Denied.

133.    Defendants have no knowledge of Plaintiffs' suspicions. To the extent a response is required, such is denied.

134.    Denied.

135.    Denied.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Denied.

144. Defendants have no knowledge as to whether Wilson Law did in fact receive fewer customer inquiries and generated less revenue and profit per month after Report 1336305 was published. Defendants deny having published Report 1336305.

145. Denied.

146. Denied.

147. Denied.

148. Denied.

149. Denied.

150. Denied.

151. Denied.

## SECOND CLAIM FOR RELIEF

152. Defendants hereby incorporate all prior responses in this Answer.

153. Denied.

154. Denied.

155. Denied.

## THIRD CLAIM FOR RELIEF

156. Defendants hereby incorporate all prior responses in this Answer.

157. Denied.

158. Denied.

159. Denied.

## FORTH CLAIM FOR RELIEF

160. Defendants hereby incorporate all prior responses in this Answer.

161. Denied.

162.    Denied.

## FIFTH CLAIM FOR RELIEF

163.    Defendants hereby incorporate all prior responses in this Answer.

164.    Denied.

165.    Denied.

## SIXTH CLAIM FOR RELIEF

166.    Defendants hereby incorporate all prior responses in this Answer.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied

## SEVENTH CLAIM FOR RELIEF

176.    Defendants hereby incorporate all prior responses in this Answer.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Denied.

181.    Denied.

182.    Denied.

183.    Denied.

## EIGHTH CLAIM FOR RELIEF

184.    Defendants hereby incorporate all prior responses in this Answer.

185.    Admitted.

186.    Denied.

187.    Denied.

188.    Denied.

189.    Denied.

190.    Denied.

191.    Denied.

192.    Denied.

193.    Denied.

194.    Denied.

195.    Denied.

196.    Denied.

197.    Denied.

198.    Denied.

199.    Denied.

200.    Denied.

## AFFIRMATIVE DEFENSES

A.      Defendants deny all allegations not specifically admitted herein.

B.     Plaintiffs failed to state a claim upon which relief can be granted under the First Claim for Relief. Specifically, Plaintiffs have failed to allege any facts of commercial advertising that are necessary for the First Claim for Relief under the Lanham Act.

C.     The Court lacks subject matter jurisdiction because Plaintiffs failed to properly allege a claim under the Lanham Act and therefore there are no issues of Federal law for this court to decide.

D.     Plaintiffs failed to state a claim upon which relief can be granted under the Second, Third, Fourth and Fifth Claim for relief. Specifically, Plaintiffs have failed to allege any facts of racketeering or unlawful debt to support claims of Organized Crime under Section 18-17-104 of the COCCA and makes allegations under various criminal code provisions for which civil remedies are not provided under Colorado law, for criminal reporting or prosecution cannot be ordered and for which Plaintiff fails to cite any proper legal authority for a civil action.

E.     Plaintiffs failed to mitigate damages.

F.     Plaintiffs' claims are barred by the doctrines of waiver, estoppel and laches.

G.     Plaintiffs' claim for damages are based on nothing more than speculation as Plaintiffs do not and cannot allege or prove that an actual customer refused to seek services from Wilson Law LLC because of Report 1336305.

H.     Plaintiffs' failed to allege any specific gain to Defendants and such allegations are conclusory.

I.     Plaintiffs failed to join a necessary party; without whom, relief cannot be provided. Specifically, Ripoff Report and Xcentric Ventures, LLC needs to be added in order to provide the injunctive relief requested by Plaintiffs.

J.    Plaintiffs are attempting to bring criminal prosecution in civil proceedings for which Plaintiffs lack standing to do so.

K.    Plaintffs' claims are barred by reason of their wrongful acts and other illegal conduct.

L.    Plaintiffs' claims are barred by the doctrine of unclean hands.

M.    Defendants reserves their right to assert additional defenses to Complaint as discovery proceeds and designate non-parties pursuant to C.R.S. § 13-21-111.5(3)(b)

## COUNTERCLAIMS

AdvisorLaw, LLC, for its Counterclaims against Mark Wilson, alleges and states as follows:

1.    AdvisorLaw is a Colorado limited liability company with its principal place of business in Broomfield County.

2.    Mark Wilson is a Colorado resident.

3.    To the extent this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1338(a), which AdvisorLaw denies, then this Court has supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a).

4.    Wilson worked for AdvisorLaw in September 2016.

5.    Non-party Charles D. Sisk worked for AdvisorLaw in September 2016.

6.    Non-party Tosh D. Grebenik worked for AdvisorLaw in September 2016.

7.    Non-party Bridget L. Schaan worked for AdvisorLaw in September2016.

8.    AdvisorLaw helps financial advisors remove frivolous customer dispute disclosures from the Financial Industry Regulatory Authority's BrokerCheck and CRD systems.

9.    In or around September 2016, Wilson, Sisk, Grebenik, and Schaan (collectively "the Conspirators") agreed to jointly and severally undertake a course of conduct with the goal of running AdvisorLaw out of business and taking its place in the market.

10. This conspiracy consisted generally of two elements. First, the Conspirators agreed to assist each other in stealing AdvisorLaw's valuable trade secrets. Second, the Conspirators agreed to assist each other in fabricating a basis for bringing frivolous and ruinous litigation against AdvisorLaw.

11. The Conspirators agreed to fabricate a basis for suing AdvisorLaw in order to damage AdvisorLaw's reputation in the community, to obtain confidential information from AdvisorLaw through discovery that the Conspirators could use to unfairly compete with AdvisorLaw, to compel AdvisorLaw to spend its resources on litigation defense rather than business activities, and to subject AdvisorLaw to a large judgment.

12. On September 19, 2016, Grebenik registered FAexpungement.com.

13. According to its website, FA Expungement helps "Financial Advisors remove frivolous customer dispute disclosures from BrokerCheck and the CRD entirely."

14. FA Expungement provides the same service as AdvisorLaw.

15. Grebenik registered FAexpungement.com for the purpose of competing with AdvisorLaw.

16. The Conspirators knew about, agreed with, and approved of Grebenik registering FAexpungement.com on September 19, 2016 for the purpose of competing with AdvisorLaw.

17. The Conspirators agreed that Sisk would publish a false and defamatory review of Wilson on the Ripoff Report website or would cause a third-party, including without limitation Jason Bacher, to publish a false and defamatory review of Wilson on the Ripoff Report website.

18. The Conspirators agreed that Wilson would falsely blame Dochtor Kennedy for publishing the review on the Ripoff Report website.

19.     The Conspirators agreed that Wilson would sue Kennedy and would allege falsely that Kennedy published the review on the Ripoff Report website.

20.     The Conspirators agreed that one or more of them, or FA Expungement, would pay Wilson's legal fees in connection with the planned litigation.

21.     On November 2, 2016, Sisk replaced Grebenik as the contact for and administrator of FAexpungement.com.

22.     On November 2, 2016, on information and belief, Sisk impersonated a fictitious person named Patrick Erickson of New York and used this fictitious identity to publish Report 1336305 on the Ripoff Report website, or otherwise induced and caused a third-party, including without limitation Jason Bacher, to impersonate a fictitious person named Patrick Erickson of New York and used this fictitious identity to publish Report 1336305 on the Ripoff Report website.

23.     When Sisk caused to be published Report 1336305, he intentionally violated Ripoff Report's Terms of Service by publishing untruthful and inaccurate information about his identity and by publishing defamatory statements about Wilson and Wilson Law.

24.     Before, on, and after November 2, 2016, the Conspirators knew and approved of Sisk causing to be published Report 1336305.

25.     Before, on, and after November 2, 2016, Wilson knew and approved of Sisk causing to be published Report 1336305.

26.     Wilson materially assisted Sisk with publishing or causing to be published Report 1336305, including by providing Sisk with information used in connection with publishing Report 1336305.

27.     Wilson and Sisk intentionally violated Ripoff Report's Terms of Service and exceeded their authorized access to Ripoff Report's website.

28.     Wilson and Sisk accessed Ripoff Report's website with the intent to and for the purpose of exercising a scheme to defraud AdvisorLaw.

29.     Wilson and Sisk accessed Ripoff Report's website with the intent to and for the purpose of exercising a scheme to defraud Xcentric Ventures, LLC.

30.     Wilson and Sisk accessed Ripoff Report's website by means of false or fraudulent pretenses, representations, or promises.

31.     Wilson and Sisk transmitted writings between Colorado and other U.S. states via wire communications with Xcentric Ventures, LLC or Ripoff Report with the intent to and for the purpose of exercising a scheme to defraud Xcentric Ventures, LLC, AdvisorLaw, or both.

32.     The following facts support the conclusion that Sisk caused Report 1336305 to be published with Wilson's assistance:

     a.  Report 1336305 was published the same day that Sisk assumed the role of administrator and contact for FAexpungement.com;

     b.  Report 1336305 published Wilson's personal cell phone number, which was not listed under any public business records;

     c.  Only two of Wilson Law's clients had Wilson's cell phone number and neither client published Report 1336305;

     d.  Sisk knew Wilson's cell phone number;

     e.  Wilson knew Wilson's cell phone number.

f.  Report 1336305 published a former personal address of Wilson's that Sisk and Wilson knew about but had not been (a) disclosed to any of Wilson's or Wilson Law's clients or (b) used for Wilson Law's business;

g.  Report 1336305 stated that Patrick Erickson was its author, and none of Wilson Law's current or former clients is named Patrick Erickson;

h.  Sisk and Wilson knew that Kennedy had spoken previously with the Conspirators about the Ripoff Report website, and therefore knew that he could be plausibly accused of publishing a report on that website;

i.  Sisk knew about the Ripoff Report website independently of anything Kennedy had said to him;

j.  At the time, Sisk exercised a significant degree of influence and control over Jason Bacher;

k.  Shortly after Report 1336305 was published, Sisk offered to take the lead on behalf of AdvisorLaw in investigating the report's provenance;

l.  Shortly after Report 1336305 was published, Sisk offered to take the lead on behalf of AdvisorLaw in discussing the matter with Wilson

m.  Sisk has utilized the false allegation that Kennedy published Report 1336305 to benefit himself and FA Expungement and to harm AdvisorLaw.

33.  On March 17, 2017, while Sisk was an employee of AdvisorLaw, Wilson and Sisk entered into a written agreement, pursuant to which:

a.  Wilson and Wilson Law released Sisk from all claims related to the publication of Report 1336305;

b.  Sisk paid Wilson $1,000;

c. Sisk agreed to assist Wilson and Wilson Law in litigation against Advisor Law, in which Wilson intended to falsely accuse Kennedy and Advisor Law of publishing Report 1336305.

34. Investing substantial time, expense, and resources, in connection with the services it provides, AdvisorLaw built and now maintains a confidential database of proprietary and trade secret information. Most relevant here is AdvisorLaw's customer relationship management ("CRM") system built on a SugarCRM platform. AdvisorLaw has populated its database through a long process of culling relevant information from lengthy and diverse sources. AdvisorLaw has adjusted and modified its CRM platform in a proprietary fashion to not only maintain current customer relationships, but also to develop and track promising sales leads. The underlying compilation of data and the 56,000 leads it generates constitute confidential, trade secret information.

35. AdvisorLaw hires sales representatives and retains other employees and independent contractors who utilize the information contained on SugarCRM to contact brokers and offer AdLaw's services to them, which services are offered at a fixed fee.

36. All of AdvisorLaw's employees and independent contractors are required to execute a Nondisclosure Agreement intended to protect the confidentiality of trade secret and/or confidential business information, and to prevent employees from unfairly competing.

37. Each of the Conspirators executed AdvisorLaw's Nondisclosure Agreement.

38. Wilson executed AdvisorLaw's Nondisclosure Agreement.

39. Employees are also required to execute AdvisorLaw's Policies and Procedures for Employees, Contractors and Affiliates ("Policies"). Pursuant to AdvisorLaw's Policies, all files and data relating to client accounts are required to be stored exclusively on the database or within

AdvisorLaw's Google Apps (G Suite Business) managed cloud. Employees are not allowed to transfer any of the information contained in the database to personal accounts.

40.     Sales representatives of AdvisorLaw are provided an account with SugarCRM, which account was exclusively administered by Bridget Schaan during her employment with AdvisorLaw.  The password to the account was issued and set by Schaan.

41.     Schaan was the only person with full administrative right to access the entire set of files and data contained on SugarCRM.

42.     Sisk had access to a significant amount of the data contained on SugarCRM.

43.     From June 15, 2017 through August 23, 2017, Sisk and Schaan repeatedly, and without limitation on two or more occasions, accessed AdvisorLaw's proprietary confidential database hosted on Advisor Law's computers, computer system, and/or computer network without authorization or in excess of authorized access, by means of false or fraudulent pretenses, for the purpose of devising or executing a scheme or artifice to defraud, to commit theft, and to alter and damage the documentation and data contained on Advisor Law's computers, computer system, and/or computer network.

44.     From June 15, 2017 through August 23, 2017, Sisk and Schaan repeatedly accessed AdvisorLaw's proprietary confidential database hosted on Advisor Law's computers, computer system, and/or computer network to steal the contact information and other associated information of Advisor Law's potential clients for the purpose of diverting potential clients to FA Expungement.

45.     From June 15, 2017 through August 23, 2017, Schaan repeatedly accessed AdvisorLaw's proprietary confidential database hosted on Advisor Law's computers, computer system, and/or computer network to erase the contact information and other associated

information of Advisor Law's potential clients for the purpose of harming AdvisorLaw's business.

46.     For example, accessing AdvisorLaw's proprietary confidential database, Sisk obtained the contact information for potential client N.N.  Sisk then utilized that information to contact N.N., tell him that AdvisorLaw could not assist, and direct him to contact FA Expungement.  N.N. became a client of FA Expungement on July 11, 2017.  Alleging fraud by FA Expungement, N.N. demanded a refund, and is currently an AdvisorLaw customer.

47.     Also on July 11, 2017, Schaan copied the entire contents of the SugarCRM database for use by FA Expungement.

48.     During the period June 15, 2017 through August 23, 2017, with the Conspirators' knowledge, approval, and encouragement, Schaan deleted the contact information for over 3,000 potential clients from AdvisorLaw's database.

49.     Sisk currently holds himself out as the Executive Director of FA Expungement.

50.     Grebenik currently holds himself out as the Owner of FA Expungement.

51.     On information and belief, Wilson or Wilson Law has a financial interest in and/or relationship with FA Expungement.

52.     On information and belief, Sisk provided Wilson, Wilson Law, or HopkinsWay PLLC with funds to finance Wilson and Wilson Law's litigation of the instant case.

53.     On information and belief, FA Expungement provided Wilson, Wilson Law, or HopkinsWay PLLC with funds to finance Wilson and Wilson Law's litigation of the instant case.

54.     On information and belief, Grebenik provided Wilson, Wilson Law, or HopkinsWay PLLC with funds to finance Wilson and Wilson Law's litigation of the instant case

55.     Wilson filed the instant case on June 22, 2017.

56.     In the instant case, Wilson has falsely accused Kennedy of publishing Report 1336305, knowing that Sisk had in fact published or caused to be published Report 1336305 with Wilson's assistance.

57.     Wilson filed the instant case in furtherance of the conspiracy and for the purpose of harming AdvisorLaw and benefiting the Conspirators.

58.     Wilson has made a number of knowingly false allegations in the Complaint and First Amended Complaint in the instant case.

59.     Wilson has made false allegations in the instant case in an attempt to influence officers and employees of this Court by means of deceit with the intent thereby to alter or affect such officers and employees' decisions, opinions, or actions concerning the instant case.

60.     Sisk has communicated with Edward C. Hopkins, Jr. about the instant case both before and after the filing of the Complaint in the instant case.

61.     With Wilson's knowledge and approval, Sisk has used information obtained from Hopkins and Wilson about the instant case to attempt to convince employees of AdvisorLaw to leave AdvisorLaw and to associate with FA Expungement.

62.     With Wilson's knowledge and approval, Sisk has attempted to direct Hopkins and Wilson's strategy in the instant case for the purpose of harming AdvisorLaw and gaining an unfair advantage for FA Expungement.

63.     With Wilson's knowledge and approval, Sisk has contacted one or more employees of AdvisorLaw and threatened that they would be named as a defendant in the instant case unless they resigned from AdvisorLaw.

64.     With Wilson's knowledge and approval, Sisk has attempted to intimidate potential witnesses in the instant case to testify falsely.  For example, Sisk threatened

AdvisorLaw employee Josh Barber and former AdvisorLaw employee Zack Barber with criminal prosecution if Josh and Zack Barber did not testify falsely that Kennedy admitted to publishing Report 1336305.

65.     With Wilson's knowledge and approval, Grebenik has attempted to intimidate potential witnesses in the instant case to testify falsely.  For example, Grebenik threatened former AdvisorLaw employee Zack Barber with criminal prosecution if Barber did not testify falsely that Kennedy admitted to publishing Report 1336305.

## FIRST CLAIM FOR RELIEF
### (Civil Conspiracy)

66.     AdvisorLaw re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

67.     Wilson entered into an agreement with Sisk, Grebenik, and Schaan to harm AdvisorLaw's business and/or to unlawfully gain an unfair competitive advantage over AdvisorLaw.

68.     Wilson furthered the goal of the conspiracy by assisting Sisk in publishing Report 1336305 , by filing frivolous litigation against AdvisorLaw, and by falsely alleging in the Complaint and First Amended Complaint that Kennedy published Report 1336305.

69.     Wilson knew and approved of Sisk, Grebenik, and Schaan's other actions in furtherance of the conspiracy, including without limitation their theft, computer crimes, misappropriation of trade secrets, industrial sabotage, breach of fiduciary duty, tortious interference with contract, witness intimidation, and tortious interference with prospective business advantage.

70.     Wilson intends to benefit, and has already benefited, from all the actions taken by all Conspirators in furtherance of the conspiracy.

71.     As a direct proximate result and consequence of the Conspirators' conspiracy, AdvisorLaw has suffered damages in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### (COCCA—C.R.S. § 18-17-104(1))

72.     AdvisorLaw re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

73.     FA Expungement is an "Enterprise" within the meaning of C.R.S. § 18-17-103(2),

74.     Wilson Law is an "Enterprise" within the meaning of C.R.S. § 18-17-103(2),

75.     HopkinsWay is an "Enterprise" within the meaning of C.R.S. § 18-17-103(2),

76.     Wilson has knowingly received proceeds derived, directly or indirectly, from a pattern of racketeering activity.  Specifically, Sisk, Grebenik, and/or FA Expungement provided Wilson with funds that Wilson knew derived, directly or indirectly, from two or more of the following acts, committed within ten years of each other, and related to the conduct of FA Expungement:

      a.  Theft of Trade Secrets (18 U.S.C. § 1832);

      b.  Computer crime (C.R.S. § 18-5.5-102(1)(a));

      c.  Computer crime (C.R.S. § 18-5.5-102(1)(b));

      d.  Computer crime (C.R.S. § 18-5.5-102(1)(c));

      e.  Computer crime (C.R.S. § 18-5.5-102(1)(d));

      f.  Computer crime (C.R.S. § 18-5.5-102(1)(e)).

77.     Wilson knowingly used, directly or indirectly, all or part of such proceeds in the operation of Wilson Law.

78.     Wilson knowingly used, directly or indirectly, all or part of such proceeds in the operation of HopkinsWay.

79. As a direct proximate result and consequence of Wilson's violation of C.R.S. § 18-17-104(1), AdvisorLaw has suffered damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (COCCA—C.R.S. § 18-17-104(3))

80. AdvisorLaw re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

81. While associated with FA Expungement, Wilson knowingly participated, directly or indirectly, in FA Expungement through a pattern of racketeering activity. Specifically, Wilson knowingly participated in FA Expungement by engaging in at least two of the following acts during the period September 2016 through September 2017:

 a. Computer crime (C.R.S. § 18-5.5-102(1)(a));

 b. Computer crime (C.R.S. § 18-5.5-102(1)(b));

 c. Computer crime (C.R.S. § 18-5.5-102(1)(c));

 d. Criminal impersonation (C.R.S. § 18-5-113);

 e. Attempt to influence a public official (C.R.S. § 18-8-306);

 f. First-degree perjury (C.R.S. § 18-8-502).

82. As a direct proximate result and consequence of Wilson's violation of C.R.S. § 18-17-104(3), AdvisorLaw has suffered damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (COCCA-- C.R.S. § 18-17-104(4))

83. AdvisorLaw re-alleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

84. Wilson, Sisk, Grebenik, and Schaan conspired to violate C.R.S. § 18-17-104(1).

85. Wilson, Sisk, Grebenik, and Schaan conspired to violate C.R.S. § 18-17-104(3).

86.     As a direct proximate result and consequence of Wilson's violation of C.R.S. §

18-17-104(4), AdvisorLaw has suffered damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**(Aiding and Abetting Breach of Fiduciary Duty)**

87.     AdvisorLaw re-alleges and incorporates by reference the foregoing paragraphs as

though fully set forth herein.

88.     Sisk, Grebenik, and Schaan have breached their fiduciary duties to AdvisorLaw

while acting as employees of AdvisorLaw by misappropriating trade secret and/or confidential

business information, by disclosing such information to FA Expungement, by agreeing to assist

Wilson in the instant case, and by unlawfully utilizing AdvisorLaw's confidential trade secret

information to compete directly with AdvisorLaw.

89.     Wilson has knowingly and actively participated in, provided substantial assistance

to, and induced Sisk, Grebenik, and Schaan to breach their fiduciary duties to AdvisorLaw.

90.     Wilson's conduct has caused and continues to cause irreparable injury and

damages to AdvisorLaw in an amount to be determined at trial.

WHEREFORE, AdvisorLaw prays for the following relief:

91.     Entry of judgment for all damages recoverable by law or in an amount to be

proven at trial, and interest thereon, as permitted by law.

92.     An order awarding AdvisorLaw its costs and attorney's fees incurred in

prosecuting this action.

93.     An order awarding AdvisorLaw threefold its actual damages.

94.     Such other relief as this Court may deem proper.

**ADVISORLAW DEMANDS A TRIAL TO A JURY**

Respectfully submitted this 7th day of December, 2017.

ALLEN VELLONE WOLF HELFRICH &
FACTOR, P.C.

*/s/ James S. Helfrich*
James S. Helfrich
Kevin D. Allen
Jordan Factor
Jennifer E. Schlatter
Allen Vellone Wolf Helfrich & Factor, P.C.
1600 Stout Street, Suite 1100
Denver, CO 80202
Tel.: (303) 534-4499
jhelfrich@allen-vellone.com
kallen@allen-vellone.com
jfactor@allen-vellone.com
jschlatter@allen-vellone.com

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on this 7th day of December, 2017 a true and correct copy of the foregoing was filed via ECF/CM filing system, which will send service upon counsel for the parties via its email service system as indicated below:

Edward C. Hopkins, Jr.
Alexandra Tracy-Ramirez
HopkinsWay PLLC.
7900 E. Union Avenue, Suite 1100
Denver, CO 80237
ehopkins@hopinsway.com
atracyramirez@hopkinsway.com

   */s/ Christina A. Clerihue*_____
Allen Vellone Wolf Helfrich & Factor, P.C.