**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-01525-MSK

MARK WILSON, an individual, and WILSON LAW LTD., a Colorado limited liability company,

      Plaintiffs,

v.

ADVISORLAW LLC, a Colorado limited liability company, DOCHTOR DANIEL KENNEDY, an individual, and STACY SANTMYER, an individual.

      Defendants.

---

**COUNTERDEFENDANT MARK WILSON'S ANSWER TO
COUNTERCLAIMANT ADVISORLAW LLC'S AMENDED
COUNTERCLAIM**

---

Counterdefendant Mark Wilson, through his attorneys at HopkinsWay PLLC,

hereby answers Counterclaimant AdvisorLaw LLC's Amended Counterclaim (Doc. # 49,

at 14 – 29).

1. **Admit.** AdvisorLaw LLC is a limited liability company formed under C.R.S.

    §§ 7-80-203 – 204 and a law firm[1] whose principal place of business is 3400

---

[1] '"Firm" or "law firm" denotes a partnership, professional company, or other entity or a sole proprietorship through which a lawyer or lawyers render legal services; or lawyers

Industrial Lane, Unit 10A, Broomfield, CO 80020.  According to Colorado

Secretary of State public records, AdvisorLaw LLC's ID Number is

20161102815; it Articles of Organization were filed on February 11, 2016; and it

filed Articles of Amendment on July 11, 2016, to change its name from

AdvisorLaw PLLC to AdvisorLaw LLC.

2. **Admit.**  Mr. Wilson lives in Colorado.

3. **Admit** and **Deny.**  Mr. Wilson **admits** this Court has original jurisdiction of

this action under 28 U.S.C. § 1338(a).  Mr. Wilson **admits** this Court has

supplemental jurisdiction under 28 U.S.C. § 1337(a).  Mr. Wilson **denies** that

AdvisorLaw LLC denies this Court has original jurisdiction of this action

because AdvisorLaw LLC, in its Amended Counterclaim, brings a claim arising

from an alleged violation of 18 U.S.C. § 1832.  *See* Doc. # 49 ¶78(a).  This

Court has original jurisdiction of civil actions brought under 18 U.S.C. § 1832.

*See* 18 U.S.C. § 1836(c).

4. **Deny.**  Mr. Wilson worked for Wilson Law Ltd. in September 2016, not

AdvisorLaw LLC.  Wilson Law Ltd. provided services to AdvisorLaw LLC in

accordance with a contract titled "Service Contract" that AdvisorLaw LLC

---

employed in a legal services organization or the legal department of a corporation or other
organization." Colo. R.P.C. 1(c).

and Wilson Law Ltd. executed during June 2016. Under the Service Contract's terms, AdvisorLaw LLC hired Wilson Law Ltd. to provide the following services to AdvisorLaw LLC until the Service Contract was terminated on or about October 1, 2016:

a. Legal Services

b. Generation of Sales and/or Revenue

c. Client Acquisition

d. Law-related services; and

e. Training.

5. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 5's factual assertions.

6. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 6's factual assertions.

7. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 7's factual assertions.

8. **Admit.** Mr. Wilson, while he worked for Wilson Law Ltd., provided law-related and other services to AdvisorLaw LLC, personally observed that AdvisorLaw LLC's agents, in addition to providing AdvisorLaw LLC's clients law-related services, helped some financial advisors request the removal of

customer dispute disclosures from the Financial Industry Regulatory

Authority's BrokerCheck and Central Registration Depository systems.

9. **Deny.** Mr. Wilson never agreed to undertake any course of conduct with the

goal of running AdvisorLaw LLC out of business or taking its place in the

market.

10. **Deny.** Mr. Wilson never agreed to help anyone steal any of AdvisorLaw

LLC's trade secrets. Mr. Wilson is aware of no reliable evidence that proves

AdvisorLaw LLC had any trade secrets to steal. Mr. Wilson is aware of no

evidence that proves (a) AdvisorLaw LLC took reasonable measures to keep

secret any information AdvisorLaw LLC alleges was a trade secret or (b) any

information AdvisorLaw LLC created derived independent economic value,

actual or potential, from not being generally known to, and not being readily

ascertainable though proper means by, other people who could have obtained

economic value from the disclosure or use of the information. Mr. Wilson

never agreed to help anyone fabricate a basis for bringing frivolous litigation

against AdvisorLaw LLC.

11. **Deny.** Mr. Wilson never agreed to fabricate a basis for suing AdvisorLaw LLC

to damage AdvisorLaw LLC's reputation, to obtain confidential information, or

to compel AdvisorLaw LLC to spend its resources on litigation defense. Mr.

Wilson commenced this action only after (a) AdvisorLaw LLC had admitted to

Mr. Wilson that one of its agents had published a derogatory and false review online about Mr. Wilson and Wilson Law Ltd.; (b) Mr. Wilson's and AdvisorLaw LLC's attempts to negotiate a prelitigation settlement were unsuccessful; and (c) AdvisorLaw LLC had failed to take reasonable measures to mitigate the foreseeable harm the fake review had caused and would cause Mr. Wilson.

12. **Deny.** Internet Corporation for Assigned Names and Numbers (ICANN) records, available through https://whois.icann.org, accessed on January 4, 2018, state Domains By Proxy, LLC, which is located at 14455 N. Hayden Road, Scottsdale, AZ 85260, is the Registrant Organization that registered the faexpungement.com domain name on September 19, 2016.

13. **Admit.** Text in the homepage for the www.faexpungement.com website, accessed on January 4, 2018, indicates the website markets or educates the public about FA Expungement, LLC's services. Text in that homepage also states: "We help Financial Advisors remove frivolous customer dispute disclosures from BrokerCheck and the CRD entirely. We also specialize in tax liens, financial compromises, bankruptcies, and civil judgments."

14. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 14's factual assertions. Mr. Wilson does not know whether FA Expungement LLC provides the same service AdvisorLaw LLC provides.

15. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 15's factual assertions. Mr. Wilson does not know the reason why FAexpungement.com was registered by Domains By Proxy, LLC.

16. **Deny.** Mr. Wilson did not know about, agree with, or approve of anyone's registering the FAexpunegment.com domain name on September 19, 2016. Mr. Wilson has no personal knowledge of whether anyone defined as a Conspirator in the Amended Counterclaim knew about, agreed with, or approved of the registering of the FAexpunegment.com domain name.

17. **Deny.** Mr. Wilson did not ask Mr. Sisk to cause, and did not agree that Mr. Sisk should, would, or could cause, Jason Bacher to publish a false and defamatory review of Mr. Wilson on the Ripoff Report website. Nor is Mr. Wilson aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 17 to this Court without violating Fed. R. Civ. P. 11(b)(3). Dochtor Kennedy, who is an attorney, owns and manages AdvisorLaw LLC. During Mr. Kennedy's deposition on December 22, 2017, Mr. Wilson's Counsel and Mr. Kennedy exchanged the following questions and answers while Mr. Wilson was present.

**Q (Mr. Wilson's Counsel).  Let me -- let me ask you a question that's -- that is capable of being answered with a yes or a no.  Did Mr. Bacher tell you, at any time, that Mr. Sisk encouraged him to publish the Ripoff Report?**

    A (Dochtor Kennedy).  No.

**Q (Mr. Wilson's Counsel).  Let me ask you another yes-or-no question.  Did Mr. Bacher tell you, at any time, that Tosh Grebenik asked him to publish the Ripoff Report?**

    A (Dochtor Kennedy).  No.

**Q (Mr. Wilson's Counsel).  Did Mr. Bacher, at any time, tell you that Mr. Wilson, my client, asked him to publish the Ripoff Report about my client?**

    A (Dochtor Kennedy).  No.

**Q (Mr. Wilson's Counsel).  Okay.  Who told you, if anyone, that Charles Sisk, Tosh Grebenik, or Mark Wilson asked Mr. Bacher to publish the Ripoff Report about my client?**

    A (Dochtor Kennedy).  Nobody told me that.

**Q (Mr. Wilson's Counsel).  Do you have anything in writing whereby you see or read someone saying to Mr. Bacher that they want him to publish the Ripoff Report about my client?**

    A (Dochtor Kennedy).  No, I do not.

**Q (Mr. Wilson's Counsel).  Do you believe that Mr. Sisk asked Jason Bacher to publish the Ripoff Report about my client at your house on November 2nd?**

    A (Dochtor Kennedy). I – that's possible.  I think he pushed more -- Mr. Sisk was pushing buttons knowing something was going to explode.  I don't know that his intent was the Ripoff Report.  He might have planted a seed and mentioned how detrimental they

could be.  I really don't know.  I just know he is great at manipulating people, and Jason, being as volatile as he is, is -- is subject to being manipulated.

Later, during the same deposition, Mr. Wilson Counsel and Mr. Kennedy

exchanged the following question and answer while Mr. Wilson was present.

> **Q (Mr. Wilson's Counsel).  Give me your theory for how Mr. Wilson encouraged or helped Mr. Bacher publish the Ripoff Report about my client.**
>
> A (Dochtor Kennedy).  Well, my theory is that ob- -- the part of it that's not a theory is that he and Mr. Grebenik were two peas in a pod.  Talking to each other multiple times a day, constantly, hours on end for a period of time.  Also, Mr. Grebenik and Mr. Sisk were extremely close.  I'm sure once we get to discovery in the matter, we're going to see a lot of communications there.  We see a lot of calls that go back and forth between all three parties, contemporaneous, right after, sequentially, what have you. I don't think that -- I think -- I think your client is hands down aware of what was going on with Mr. Grebenik and his co-conspirators in regard to that stealing of our proprietary information; trying to do so behind our back, and all those sort of things.  He is intimately familiar with that.  I don't know that your client realized that by being part of that, he was actually encouraging, and he was kind of their fall guy, and he was going to take a shot in order to benefit the greater group by letting Mr. Sisk manipulate Jason into doing something harmful to your client that would trigger your client to bring a lawsuit against me; distracting me, while they steal everything out the side door.

18. **Deny.**  Mr. Wilson and others the Amended Counterclaim defines as

Conspirators did not agree to falsely blame Dochtor Kennedy for publishing

any review on the Ripoff Report website.  Prior to commencing this action, Mr.

Wilson and Mr. Wilson's Counsel, in compliance with Fed. R. Civ. P. 11,

conducted a reasonable inquiry whereby they uncovered reliable evidence that

proves it is more likely than not likely Mr. Kennedy published Ripoff Report #1336305 on November 2, 2016.  Additional evidence obtained via discovery proves:

a.  only Dochtor Kennedy had the motive, means, and opportunity to access the Ripoff Report website and publish Ripoff Report #1336305;

b.  the internet protocol (IP) address used to access the Ripoff Report website and publish Ripoff Report #1336305 on November 2, 2016, between 7:21 p.m. and 7:25 p.m. Mountain Standard Time is 24.52.34.175 (*see* **Answer Exhibit 1**);

c.  Mr. Kennedy is the subscriber whose home network used IP address 24.52.34.175 on November 2, 2016, between 7:21 p.m. and 7:25 p.m. Mountain Standard Time (*see* **Answer Exhibit 2**);

d.  Jason Bacher was not at Mr. Kennedy's home on November 2, 2016, between 7:21 p.m. and 7:25 p.m. Mountain Standard Time; and

e.  Mr. Bacher did not use IP address 24.52.34.175 on November 2, 2016, between 7:21 p.m. and 7:25 p.m. Mountain Standard Time.

Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 18 to this Court without violating Fed. R. Civ. P. 11(b)(3).

19. **Deny.** Mr. Wilson and others the Amended Counterclaim defines as Conspirators did not agree that Mr. Wilson would sue Dochtor Kennedy and would falsely allege Mr. Kennedy published any review on the Ripoff Report website. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 19 to this Court without violating Fed. R. Civ. P. 11(b)(3).

20. **Deny.** Mr. Wilson did not agree with others the Amended Counterclaim defines as Conspirators that anyone other than Mr. Wilson and Wilson Law Ltd. would pay for Mr. Wilson's legal fees in connection with the litigation Mr. Wilson and Wilson Law Ltd. planned to commence and commenced against AdvisorLaw LLC. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 20 to this Court without violating Fed. R. Civ. P. 11(b)(3).

21. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 21's factual assertions.

22. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves it is more likely than not that Dochtor Kennedy impersonated a fictitious person named Patrick Erickson of New York and used the fictitious identity to publish Ripoff Report #1336305 on the Ripoff Report website. Mr. Wilson is not aware of any evidence that could have led

AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 22 to this Court without violating Fed. R. Civ. P. 11(b)(3).

23. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published Ripoff Report #1336305. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 23 to this Court without violating Fed. R. Civ. P. 11(b)(3).

24. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published Ripoff Report #1336305. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 24 to this Court without violating Fed. R. Civ. P. 11(b)(3).

25. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves that Dochtor Kennedy authored and published Ripoff Report #1336305. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 25 to this Court without violating Fed. R. Civ. P. 11(b)(3).

26. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published Ripoff Report #1336305. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 26 to this Court without violating Fed. R. Civ. P. 11(b)(3).

27. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published Ripoff Report #1336305. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 27 to this Court without violating Fed. R. Civ. P. 11(b)(3).

28. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published Ripoff Report #1336305. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 28 to this Court without violating Fed. R. Civ. P. 11(b)(3).

29. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published

Ripoff Report #1336305.  Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 29 to this Court without violating Fed. R. Civ. P. 11(b)(3).

30. **Deny.**  For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published Ripoff Report #1336305.

   30.a. **Deny.**  Mr. Wilson is aware of no evidence that can prove this allegation is true.

   30.b. **Deny.**  In a sworn affidavit (Doc. # 11-1) Jason Bacher signed on June 1, 2017, he stated Mr. Kennedy admitted that Mr. Kennedy authored and published Ripoff Report #1336305 and then offered Mr. Bacher $2,000 to take responsibility for publishing it.  Mr. Wilson is aware of no evidence that proves Mr. Bacher expressed a willingness to admit under oath in a court proceeding that he published Ripoff Report #1336305 or that he later retracted an admission that he published Ripoff Report #1336305.

   30.c. **Admit.**

   30.d. **Admit** and **Deny.**  Mr. Wilson is aware of reliable evidence that proves Dochtor Kennedy was in his home between 7:21 p.m. and 7:25 p.m. Mountain Standard Time on November 2, 2016.  Mr. Wilson is aware of no

reliable evidence that proves either JaYoung Kennedy or Jason Bacher was in Mr. Kennedy's home between 7:21 p.m. and 7:25 p.m. Mountain Standard Time on November 2, 2016.

30.e. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published Ripoff Report #1336305.

30.f. **Admit.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy, not JaYoung Kennedy, authored and published Ripoff Report #1336305.

30.g. **Deny.** Jason Bacher was not at Dochtor Kennedy's home between 7:21 p.m. and 7:25 p.m. Mountain Standard Time on November 2, 2016. Mr. Kennedy could not have observed Mr. Bacher on one or more electronic devices in Mr. Kennedy's home during that period.

30.h. **Deny.** There is no evidence any device that Jason Bacher used between 7:21 p.m. and 7:25 p.m. Mountain Standard Time on November 2, 2016, was connected to the WiFi system at Dochtor Kennedy's home during that period.

30.i. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 30.i.'s factual assertions.

30.j. **Admit.** Dochtor Kennedy, Ripoff Report #1336305's author and publisher, knew Mr. Wilson's personal cell phone number before November 2, 2016.

30.k. **Admit.**

30.l. **Admit.** Mr. Wilson has reasonable grounds to believe Charles Sisk knew Mr. Wilson's cell phone number before November 2, 2016.

30.m. **Admit.**

30.n. **Admit** and **Deny.** Mr. Wilson **admits** Ripoff Report #1336305 published a former personal address of Mr. Wilson's that Mr. Wilson knew about. Mr. Wilson also **admits** the former address had not been disclosed to any of Mr. Wilson's clients; had not been used as a mailing address for Wilson Law Ltd.; had not been used in connection with contracts or agreements between Wilson Law Ltd. and AdvisorLaw LLC. Mr. Wilson does not have sufficient personal knowledge to know whether Charles Sisk knew about the former address on or before November 2, 2016, so Mr. Wilson **denies** that Mr. Sisk knew about the personal address on or before November 2, 2016. Mr. Wilson **denies** that AdvisorLaw LLC did not know about the address.

30.o. **Admit** and **Deny.** Mr. Wilson **admits** Dochtor Kennedy had talked about the Ripoff Report website with the people the Amended

Counterclaim defines as Conspirators before November 2, 2016. Mr. Wilson **denies** that Charles Sisk and he discussed whether Mr. Kennedy could be plausibly accused of publishing a report on the Ripoff Report. Mr. Wilson **denies** that he conspired with anyone to publish Ripoff Report #1336305.

30.p. **Admit.** Mr. Wilson has reasonable grounds to believe Charles Sisk knew the Ripoff Report website existed before November 2, 2016, because Dochtor Kennedy had discussed the website with Mr. Sisk before November 2, 2016.

30.q. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 30.q.'s factual assertions.

30.r. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 30.r.'s factual assertions.

30.s. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 30.s.'s factual assertions.

30.t. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 30.t.'s factual assertions.

30.u. **Admit** and **Deny.** Mr. Wilson **admits** Mr. Wilson and Charles Sisk signed a settlement agreement on March 17, 2017. Mr. Wilson does not

have sufficient personal knowledge about Allegation 30.u.'s remaining factual assertions, so Mr. Wilson **denies** them.

30.v. **Deny.** Mr. Wilson did not conceal the March 17, 2017, Agreement. Mr. Wilson does not have sufficient personal knowledge about whether Charles Sisk concealed the March 17, 2017, Agreement, so Mr. Wilson **denies** that he did.

30.w. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves Dochtor Kennedy authored and published Ripoff Report #1336305. Therefore, no allegation that Mr. Kennedy published Ripoff Report #1336305 is false. Mr. Wilson has no personal knowledge of whether Charles Sisk or FA Expungement could benefit or attempted to benefit from utilizing the true allegation that Mr. Kennedy published Ripoff Report #1336305.

30.x. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 30.x.'s factual assertions.

30.y. **Deny.** On January 2, 2018, Mr. Wilson disclosed an expert report to AdvisorLaw LLC that explains why it will cost Mr. Wilson and Wilson Law. Ltd. at least $1,080,000.00 to mitigate the substantial reputational harm Dochtor Kennedy caused by publishing Ripoff Report #1336305 on AdvisorLaw LLC's behalf. In addition to the mitigation costs, Mr. Wilson

estimates reasonable jurors will agree the reputational harm he and Wilson

Law Ltd. will have suffered between November 2, 2016, the date Dochtor

Kennedy published Ripoff Report #13333605, and the date a court will enter

a judgment in Mr. Wilson's and Wilson Law Ltd.'s favor for their claims,

has an estimated value of no less than $1,000.00 per day.

30.z. **Deny.** Mr. Wilson never had a goal of becoming a plaintiff in a

defamation, false advertising, injurious falsehood, and racketeering lawsuit

against a former friend who had betrayed and deceived him and others so

maliciously. No reasonable person would volunteer to endure the stress,

inconveniences, annoyances, and expenses of civil litigation in federal court

unless he believed there was no other way to achieve justice for the

substantial harms another had caused him. Mr. Wilson is a reasonable

person. Mr. Wilson denies that he told anyone his father was the plaintiff in

a lawsuit and was able to live off its proceeds for the remainder of his life.

30.aa. **Deny.**

31. **Admit** and **Deny.** Mr. Wilson **admits** he and Charles Sisk formed a written

agreement on March 17, 2017. Mr. Wilson does not have sufficient personal

knowledge about the nature of the business relationship between Mr. Sisk and

AdvisorLaw LLC on March 17, 2017, and therefore **denies** Mr. Sisk was an

AdvisorLaw LLC employee on March 17, 2017.

31.a. **Admit.** One of the terms of the agreement Mr. Wilson and Mr. Sisk formed on March 17, 2017, was that Mr. Wilson agreed to release Mr. Sisk from all claims related to the publication of Ripoff Report #1336305.

31.b. **Admit.** Mr. Sisk paid Mr. Wilson $1,000 as consideration.

31.c. **Admit** and **Deny.** Mr. Wilson **admits** Mr. Sisk agreed to assist Mr. Wilson, if called as a witness, by giving honest testimony about things of which he had personal knowledge and by not helping Dochtor Kennedy or AdvisorLaw LLC deceive the Court, destroy evidence, or obfuscate or withhold any material evidence. Mr. Wilson **denies** that he intended to falsely accuse Mr. Kennedy and AdvisorLaw LLC of publishing Ripoff Report #1336305. Evidence proves beyond a reasonable doubt that Mr. Kennedy published Ripoff Report #1336305 for AdvisorLaw LLC's benefit.

32. **Deny.** Mr. Wilson is aware of no evidence that proves the consumer relationship management system or database described in Allegation 32 is confidential or a trade secret. Mr. Wilson is aware of no evidence that proves the allegedly confidential information is confidential. Mr. Wilson is aware of no evidence that proves the information is not publicly available and is aware of no information that proves AdvisorLaw LLC took reasonable measures to keep any of the information confidential. Mr. Wilson is aware of no evidence that proves the information AdvisorLaw LLC claims is a trade secret is a trade

secret because Mr. Wilson is aware of no evidence that proves the information

qualifies as a trade secret under 18 U.S.C. § 1832(3) or C.R.S. § 7-74-102(4).

Nor is Mr. Wilson aware of evidence that proves AdvisorLaw LLC populated

its database through a long process of culling information from lengthy and

diverse sources rather than by the brief process of using software developed by

Dimas Gutierrez of Apps Plus Advertising LLC to unlawfully scrape or grab

publicly available information from websites in violation of those websites'

terms of use or terms of service agreements.

33. **Deny.** Mr. Wilson does not have sufficient personal knowledge about
Allegation 33's factual assertions.

34. **Deny.** Mr. Wilson does not have sufficient personal knowledge about
Allegation 34's factual assertions.

35. **Deny.** Mr. Wilson did not sign AdvisorLaw LLC's Nondisclosure Agreement.
Mr. Wilson, while representing Wilson Law Ltd., signed the Service Contract

described in Mr. Wilson's response above to Allegation 4. The Service

Contract contains the following provision:

> Confidential information (the "Information") refers to any data or
> information relating to AdvisorLaw and sensitive client information,
> whether business or personal, which would reasonably be considered to be
> private or proprietary to AdvisorLaw and that is not generally known and
> where the release of that Information could reasonably be expected to cause
> harm to AdvisorLaw. Wilson Law agrees that they will not disclose, divulge,

reveal, report, or use for any purpose, any Information which Wilson Law has obtained, except as authorized by AdvisorLaw or as required by law.

Mr. Wilson does not have sufficient personal knowledge of Allegation 35's other factual assertions, so he **denies** them.

36. **Deny.** Mr. Wilson did not sign AdvisorLaw LLC's Nondisclosure Agreement. Mr. Wilson, while representing Wilson Law Ltd., signed the Service Contract described in Mr. Wilson's response above to Allegation 4. The Service Contract contains the following provision:

> Confidential information (the "Information") refers to any data or information relating to AdvisorLaw and sensitive client information, whether business or personal, which would reasonably be considered to be private or proprietary to AdvisorLaw and that is not generally known and where the release of that Information could reasonably be expected to cause harm to AdvisorLaw. Wilson Law agrees that they will not disclose, divulge, reveal, report, or use for any purpose, any Information which Wilson Law has obtained, except as authorized by AdvisorLaw or as required by law.

37. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 37's factual assertions.

38. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 38's factual assertions.

39. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 39's factual assertions.

40. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 40's factual assertions.

41. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 41's factual assertions.

42. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 42's factual assertions.

43. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 43's factual assertions.

44. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 44's factual assertions.

45. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 45's factual assertions.

46. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 46's factual assertions.

47. **Deny.** Mr. Wilson did not access AdvisorLaw LLC's computer network without authorization and alter or delete data on that network or prevent AdvisorLaw LLC and its employees from accessing such data for the purpose of executing a scheme or artifice. Mr. Wilson did not obtain or access any AdvisorLaw LLC database without AdvisorLaw LLC's permission or authorization. Mr. Wilson only accessed information on AdvisorLaw LLC's computer network that AdvisorLaw LLC had authorized and given him permission to access. Mr. Wilson does not have sufficient information to know

how to respond accurately to Allegation 47's remaining factual assertions and therefore **denies** them.

48. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 48's factual assertions.

49. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 49's factual assertions.

50. **Deny.** Neither Mr. Wilson nor Wilson Law Ltd. has a financial interest in and/or relationship with FA Expungement. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 50 to this Court without violating Fed. R. Civ. P. 11(b)(3).

51. **Deny.** Charles Sisk did not provide Mr. Wilson, Wilson Law Ltd. or HopkinsWay PLLC with funds to finance any litigation in this action. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 51 to this Court without violating Fed. R. Civ. P. 11(b)(3).

52. **Deny.** FA Expungement did not provide Mr. Wilson, Wilson Law Ltd. or HopkinsWay PLLC with funds to finance any litigation in this action. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a

reasonable attorney to believe it, he, or she could submit Allegation 51 to this Court without violating Fed. R. Civ. P. 11(b)(3).

53. **Deny.**

54. **Deny.**

55. **Deny.** Mr. Wilson did not ask Dochtor Kennedy for a $20,000 loan.

56. **Admit** and **Deny.** Mr. Wilson **admits** he loaned $20,000 to Wilson Law Ltd. before commencing this civil action. Mr. Wilson **denies** that Charles Sisk or FA Expungement was the loan's source.

57. **Admit.**

58. **Deny.** For reasons stated above in Mr. Wilson's responses to Allegation 17 and Allegation 18, evidence proves that Dochtor Kennedy authored and published Ripoff Report #1336305. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 58 to this Court without violating Fed. R. Civ. P. 11(b)(3).

59. **Deny.** Mr. Wilson did not commence this civil action in furtherance of any conspiracy or for the purpose of harming AdvisorLaw LLC or benefitting the people the Amended Counterclaim defines as the Conspirators. Mr. Wilson commenced this action to seek and obtain justice for himself and Wilson Law Ltd., using the judicial process, only after (a) AdvisorLaw LLC had admitted to

Mr. Wilson that one of its agents had published a derogatory and false review online about Mr. Wilson and Wilson Law Ltd.; (b) Mr. Wilson's and AdvisorLaw LLC's attempts to negotiate a prelitigation settlement were unsuccessful; and (c) AdvisorLaw LLC had failed to take reasonable measures to mitigate the foreseeable harm the unlawful fake review had caused and would cause Mr. Wilson. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 59 to this Court without violating Fed. R. Civ. P. 11(b)(3).

60. **Deny.** Mr. Wilson did not knowingly make any false allegations in the Complaint or First Amended Complaint for this civil action. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 60 to this Court without violating Fed. R. Civ. P. 11(b)(3).

61. **Deny.** Mr. Wilson did not knowingly make any false allegations in this civil action or attempt to influence officers and employees of this Court by means of deceit with the intent to alter or affect the officers' and employees' decisions, opinions, or actions. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 61 to this Court without violating Fed. R. Civ. P. 11(b)(3).

62. **Admit** and **Deny.** Mr. Wilson **denies** that Charles Sisk communicated with Mr. Wilson's Counsel, Edward C. Hopkins Jr. of HopkinsWay PLLC, about this civil action before it commenced. Mr. Wilson **admits** that Charles Sisk communicated with Mr. Hopkins after Mr. Sisk had informed Mr. Hopkins that Mr. Sisk's contractual or business relationship with AdvisorLaw LLC had ended.

63. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 63's factual assertions.

64. **Deny.** Mr. Wilson has no knowledge of any attempt by Charles Sisk to direct Mr. Wilson's Counsel's strategy in this civil action and Mr. Wilson has no reason to believe his competent, qualified, and experienced Counsel would allow or benefit from any such attempt. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 64 to this Court without violating Fed. R. Civ. P. 11(b)(3).

65. **Deny.** Mr. Wilson has no knowledge of any efforts by Charles Sisk to threaten any AdvisorLaw LLC employees or threaten that they would be named as defendants in the civil litigation unless they resigned from AdvisorLaw LLC. Mr. Sisk has never worked for or been an agent of Mr. Wilson's Counsel or Mr. Wilson's Counsel's law firm and could not have had the authority to make any

representations to others on behalf of Mr. Wilson's Counsel or Mr. Wilson's Counsel's law firm. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 65 to this Court without violating Fed. R. Civ. P. 11(b)(3).

66. **Deny.** Mr. Wilson has no knowledge of any efforts by Charles Sisk to attempt to intimidate any potential witness in this civil action to testify falsely. Nor is Mr. Wilson aware of any efforts by Mr. Sisk to threaten Joshua Barber or Zack Barber with criminal prosecution. Mr. Wilson has no reason to believe Mr. Sisk has ever worked for any law enforcement agency that has the authority to commence a criminal action against Joshua Barber or Zack Barber and has no reason to believe either Joshua Barber or Zack Barber, both of whom know at least one attorney, would have been so ignorant of how criminal prosecutions work to have believed Mr. Sisk could have commenced a criminal prosecution against either of them. Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 66 to this Court without violating Fed. R. Civ. P. 11(b)(3).

67. **Deny.** Mr. Wilson has no knowledge of any efforts by Tosh Grebenik to attempt to intimidate any potential witness in this civil action to testify falsely. Nor is Mr. Wilson aware of any efforts by Mr. Sisk to threaten Zack Barber with criminal prosecution. Mr. Wilson has no reason to believe Mr. Grebenik

has ever worked for any law enforcement agency that has the authority to
commence a criminal action against Zack Barber and has no reason to believe
Zack Barber, who is represented by an attorney, would have been so ignorant of
how criminal prosecutions work to have believed Mr. Grebenik could have
commenced a criminal prosecution against him.  Mr. Wilson is not aware of any
evidence that could have led AdvisorLaw LLC or a reasonable attorney to
believe it, he, or she could submit Allegation 67 to this Court without violating
Fed. R. Civ. P. 11(b)(3).

### ANSWER TO FIRST CLAIM FOR RELIEF
### (Civil Conspiracy)

68. Mr. Wilson incorporates by reference all his foregoing responses to the
foregoing paragraphs of the Amended Counterclaim.

69. **Deny.**  Mr. Wilson is not aware of any evidence that could have led
AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit
Allegation 69 to this Court without violating Fed. R. Civ. P. 11(b)(3).

70. **Deny.**  Mr. Wilson is not aware of any evidence that could have led
AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit
Allegation 70 to this Court without violating Fed. R. Civ. P. 11(b)(3).

71. **Deny.** Mr. Wilson is not aware of any evidence that could have led

    AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit

    Allegation 71 to this Court without violating Fed. R. Civ. P. 11(b)(3).

72. **Deny.** Mr. Wilson is not aware of any evidence that could have led

    AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit

    Allegation 72 to this Court without violating Fed. R. Civ. P. 11(b)(3).

73. **Deny.** Mr. Wilson is not aware of any evidence that could have led

    AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit

    Allegation 73 to this Court without violating Fed. R. Civ. P. 11(b)(3).

### ANSWER TO SECOND CLAIM FOR RELIEF
### (COCCA—C.R.S. § 18-17-104(1))

74. Mr. Wilson incorporates by reference all his foregoing responses to the

    foregoing paragraphs of the Amended Counterclaim.

75. **Deny.** Mr. Wilson does not have sufficient personal knowledge about

    Allegation 75's factual assertions.

76. **Admit.**

77. **Admit.**

78. **Deny.** Mr. Wilson is not aware of any evidence that could have led

    AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit

    Allegation 78 to this Court without violating Fed. R. Civ. P. 11(b)(3).

78.a. **Deny.**

78.b. **Deny.**

78.c. **Deny.**

78.d. **Deny.**

78.e. **Deny.**

78.f. **Deny.**

79. **Deny.** Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 79 to this Court without violating Fed. R. Civ. P. 11(b)(3).

80. **Deny.** Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 80 to this Court without violating Fed. R. Civ. P. 11(b)(3).

81. **Deny.** Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 81 to this Court without violating Fed. R. Civ. P. 11(b)(3).

## ANSWER TO THIRD CLAIM FOR RELIEF
### (COCCA—C.R.S. § 18-17-104(3))

82. Mr. Wilson incorporates by reference all his foregoing responses to the foregoing paragraphs of the Amended Counterclaim.

83. **Deny.** Mr. Wilson is not aware of any evidence that could have led

AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit

Allegation 83 to this Court without violating Fed. R. Civ. P. 11(b)(3).

    83.a. **Deny.**

    83.b. **Deny.**

    83.c. **Deny.**

    83.d. **Deny.**

    83.e. **Deny.**

    83.f. **Deny.**

84. **Deny.** Mr. Wilson is not aware of any evidence that could have led

AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit

Allegation 84 to this Court without violating Fed. R. Civ. P. 11(b)(3).

### ANSWER TO FOURTH CLAIM FOR RELIEF
### (COCCA—C.R.S. § 18-17-104(4))

85. Mr. Wilson incorporates by reference all his foregoing responses to the

foregoing paragraphs of the Amended Counterclaim.

86. **Deny.** Mr. Wilson is not aware of any evidence that could have led

AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit

Allegation 86 to this Court without violating Fed. R. Civ. P. 11(b)(3).

87. **Deny.** Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 87 to this Court without violating Fed. R. Civ. P. 11(b)(3).

88. **Deny.** Mr. Wilson is not aware of any evidence that could have led AdvisorLaw LLC or a reasonable attorney to believe it, he, or she could submit Allegation 88 to this Court without violating Fed. R. Civ. P. 11(b)(3).

## ANSWER TO FIFTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty)

89. Mr. Wilson incorporates by reference all his foregoing responses to the foregoing paragraphs of the Amended Counterclaim.

90. **Deny.** Mr. Wilson does not have sufficient personal knowledge about Allegation 90's factual assertions.

91. **Deny.**

92. **Deny.**

## ANSWER TO PRAYER FOR RELIEF

Mr. Wilson denies AdvisorLaw is entitled to any of the relief requested in Paragraphs 93-96.

## AFFIRMATIVE DEFENSES

1. Mr. Wilson hereby denies any allegation he did not expressly deny above.

2. AdvisorLaw LLC failed to state a civil conspiracy claim for which relief can be granted because it failed to allege facts that can prove

    a. Mr. Wilson formed an agreement with others, by words or conduct, to accomplish an unlawful goal or accomplish a goal through unlawful means; and

    b. AdvisorLaw LLC suffered damages as a proximate result of Mr. Wilson's intentional acts.

3. AdvisorLaw LLC failed to state a COCCA claim under C.R.S. § 18-17-104(1) for which relief can be granted because it failed to allege facts that can prove

    a. Mr. Wilson knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity; and

    b. AdvisorLaw LLC suffered damages as a proximate result of Mr. Wilson's intentional acts.

4. AdvisorLaw LLC failed to state a COCCA claim under C.R.S. § 18-17-104(3) for which relief can be granted because it failed to allege facts that can prove

    a. Mr. Wilson knowingly conducted or participated in an enterprise through a pattern of racketeering activity; and

    b. AdvisorLaw LLC suffered damages as a proximate result of Mr. Wilson's intentional acts.

5. AdvisorLaw LLC failed to state a COCCA claim under C.R.S. § 18-17-104(4) for which relief can be granted because it failed to allege facts that can prove

    a. Mr. Wilson conspired or endeavored to violate C.R.S. § 18-17-104(1), (2), or (3); and

    b. AdvisorLaw LLC suffered damages as a proximate result of Mr. Wilson's intentional acts.

6. AdvisorLaw LLC failed to state an aiding and abetting breach of fiduciary duty claim for which relief can be granted because it failed to allege facts that can prove

    a. Mr. Wilson helped or encouraged any non-party to breach its, his, or her fiduciary duty to AdvisorLaw LLC; and

    b. AdvisorLaw LLC suffered damages as a proximate result of Mr. Wilson's intentional acts.

7. AdvisorLaw LLC failed to state any viable claim for relief under any theory.

8. AdvisorLaw LLC failed to join under Fed. R. Civ. P. 19 necessary non-parties whom the Amended Counterclaim defined as Conspirators and without whom AdvisorLaw LLC's claims cannot be justly adjudicated.

9. AdvisorLaw LLC failed to mitigate its damages if it suffered any.

10. AdvisorLaw LLC, through its owner Dochtor Kennedy, has engaged in illegal and unethical activity, has acted in bad faith, and is precluded from recovery by law and under the equitable doctrine of unclean hands.

Dated January 5, 2018

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.
*s/ Alexandra Tracy-Ramirez*
Alexandra Tracy-Ramirez
HopkinsWay PLLC
7900 E. Union Ave., Ste. 1100
Denver, CO 80237
(720) 262-5545 tel | (720) 262-5546 fax
Email: ehopkins@hopkinsway.com
Email: atracyramirez@hopkinsway.com
*Attorneys for Plaintiffs*