# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-1525-MSK

MARK WILSON, and
WILSON LAW LTD.,

     Plaintiffs,

v.

ADVISORLAW LLC,
DOCHTOR DANIEL KENNEDY, and
STACY SANTMYER,

     Defendants.

---

## OPINION AND ORDER GRANTING IN PART MOTION TO DISMISS

---

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss (**# 18**), the Plaintiffs' responses (**## 21**, **22**), and the Defendants' reply (**# 24**). For the reasons that follow, the Motion is granted, in part.

## I.  JURISDICTION

The Court has jurisdiction to hear this case under 28 U.S.C. § 1331.

## II.  BACKGROUND[1]

According to the Amended Complaint, Plaintiff Mark Wilson and Defendant Dochtor Kennedy had a business relationship through their corporate entities, Wilson Law Ltd. and AdvisorLaw LLC.  AdvisorLaw elected to terminate this business relationship in October 2016.

---

[1]  The Court recounts and accepts as true the well-pled facts alleged in the Amended Complaint (**# 11**).  *See Dudnikov v. Chalk & Vermilion Fine Arts Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

Thereafter, Mr. Kennedy emailed Mr. Wilson expressing disappointment that Mr. Wilson was "competing with my business." # 11 at 6. In another email, Mr. Kennedy asserted that Mr. Wilson was using AdvisorLaw without authorization and to its detriment. That same day, posing as "Patrick Erickson," Mr. Kennedy posted the following review of Wilson Law on the website ripoffreport.com (Review):

 Mark H. Wilson sounds very trustworthy and experienced. **He lied to me with no reservations**. He made claims of his experience, affiliations, credentials, and acumen [sic] which were complete fabrications. **He conned me** into hiring his s**ham of a company** (operating out of his home in Denver, CO) to save my career.

I desperately needed an experienced lawyer to navigate FINRA and the IRS issues which resulted from a recent divorce. Mark portrayed himself as an expert with vast experience. Only after paying him **upwards of $15,000** did I begin to have concern over the lack of progress. After paying additional money to a professional investigator, I learned that Mark had **flat out lied to me** about all of it.

When I confronted Mark, he refused to admit that he had taken advantage of me. Even when hard evidence of his lies sent by email and recorded conversations proven to be lies were provided, he told me candidly "good luck getting any money back." **He said**, "I am very good at **hiding from judgments and collections**." That may have been the ONLY true thing he said.

Ex. 3 to Am. Compl., # 11-3 at 2 (emphases in original). After authoring the Review, Mr. Kennedy told his employees at AdvisorLaw that he had done so. He offered employee Jason Bacher $2,000 to tell others that he had written the Review, and then told Mr. Wilson that Mr. Bacher had written the Review. Stacy Santmyer, another employee, encouraged Mr. Kennedy to blame the Review on Mr. Bacher.

On these and other allegations, the Amended Complaint (**# 11**) makes the following claims: (1) false advertising under the Lanham Act, (2) four claims of racketeering activity under the Colorado Organized Crime Control Act (COCCA), (3) deceptive trade practices under the Colorado Consumer Protection Act (CCPA), (4) defamation, and (5) civil conspiracy. In

addition to compensatory relief, the Plaintiffs request injunctive relief in the following forms: an order enjoining the Defendants from publishing defamatory statements about the Plaintiffs, an order requiring the Defendants to have the Review deleted from the Internet or removed from Internet search engines, an order enjoining third parties from republishing the Review, and an order requiring AdvisorLaw to report Mr. Kennedy's and Mr. Santmyer's criminal violations to law enforcement.  The Defendants have moved to dismiss the Lanham Act, COCCA, and CCPA claims (**# 18**).

### III.  LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  The Court must limit its consideration to the four corners of the complaint, any exhibits attached thereto, and any external documents that are incorporated by reference.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  However, a court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.  *Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To make such an assessment, the Court first discards those averments in the complaint that are merely legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.  The Court then takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether

those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a "plausible" as compared to a "conceivable" claim. *See: Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## IV.  DISCUSSION

The Defendants move to dismiss the Plaintiffs' false-advertising claim under the Lanham Act, COCCA claims, and CCPA claim.  They do not move to dismiss the defamation or civil conspiracy claims.  The Court discusses each claim in turn.

## A.  False Advertising Under the Lanham Act

The Lanham Act prohibits a person from using, in commercial advertising or promotion, any "false or misleading description of fact" that "misrepresents the nature, characteristics, qualities, or geographic origin" of another person's services or commercial activities.  15 U.S.C. § 1125(a).  To establish a *prima facie* claim for false advertising, the Plaintiffs must show that: (1) the Defendants made a materially false or misleading representation of fact (2) in connection with their commercial advertising or promotion (3) in commerce; (4) such representation misrepresents the nature of the Plaintiffs' services or commercial activities; and (5) the Plaintiffs have been or are likely to be injured as a result.  *See World Wide Ass'n of Specialty Programs v. Pure Inc*., 450 F.3d 1132, 1140 (10th Cir. 2006); J. Thomas McCarthy, *McCarthy on Trademarks* § 27:24 (5th ed. 2017).[2]

---

[2]  In *Pure*, the Tenth Circuit's conception of the elements of a false-advertising claim includes the likelihood of confusion or mistake over product characteristics, which is clearly derived from § 1125(a)(1)(A).  Subsection (A) pertains to trademark infringement claims.  Tracing Tenth Circuit precedent, *Pure's* conception of the false-advertising elements originated from a treatise. *See Cottrell Ltd. v. Biotrol Int'l Inc*., 191 F.3d 1248, 1252 (10th Cir. 1999) (citing Charles E. McKenney & George F. Long III, *Federal Unfair Competition: Lanham Act § 43(a)* § 6 (11th ed. 1998)).  Section 6 of this treatise does not cover subsection (A); indeed, the entire section covers subsection (B).  Its conception of the false-advertising elements makes no reference to the likelihood of confusion.  McKenney & Long, *supra*, § 6.3.  For these reasons, the Court has

To constitute "commercial advertising or promotion", a factual representation must have four characteristics: (1) it must be commercial speech, (2) it must be made by (or on behalf of) a defendant who is in commercial competition with the plaintiff, (3) it must be for the purpose of influencing consumers to obtain the defendant's services, and (4) it must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within the relevant industry. *See Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000).

The Defendants first argue that the Lanham Act requires the Plaintiffs to have a registered trademark to sustain a cause of action and to have a famous mark to obtain injunctive relief, which is not alleged in the Amended Complaint. That is not so.

Although the Lanham Act deals with federal registration and related matters, the false-advertising provisions in § 1125(a)(1)(B) are not connected by reference to any trademark rights, either registered or not. Subsection (A) deals with confusion between marks or "designations". Often it is invoked as a vehicle for relief where there is a claim of trademark infringement, but in that context, Subsection (A) does not require registration to sustain a cause of action. McCarthy, *supra*, § 27:13. Subsection (B) has nothing to do with a mark of any kind.[3] It concerns a false representation of fact. Similarly, there is no requirement under the Lanham Act that a false-advertising claim be based on a famous mark to impose injunctive relief. Thus, a Subsection (A) claim is premised upon a mark or designation that causes confusion and a Subsection (B) claim is premised upon a false representation of fact. In addition, Courts have routinely allowed injunctive relief for false-advertising claims on a strong showing of irreparable

modified the false-advertising elements to remove any reference to likelihood of confusion in accordance with McCarthy's treatise.

[3] Subsection (B) also has nothing to do with the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(1)(A)), which the Defendants invoke in the Motion to Dismiss.

harm.  *See, e.g.*, *Highmark Inc. v. UPMC Health Plan Inc.*, 276 F.3d 160, 171–74 (3d Cir. 2001); *accord* McCarthy, *supra*, § 27:37.  The Defendants' citation to § 1125(c)(1) is entirely inapposite.

Their second argument is that that the Review does not constitute "commercial advertising or promotion".  In specific, they argue that the Review cannot be an advertisement because (1) it did not refer to the Plaintiffs' domain name or misuse such name, (2) it did not make any direct or indirect reference to any of the Defendants, and (3) it was not disseminated sufficiently to the public.  The Defendants maintain that if the Review is hurting the Plaintiffs' business, the Amended Complaint must state exactly how such injuries occur.

Taking the alleged facts as true, Mr. Kennedy authored the review on a widely-read website with the intent to dissuade the public from using Mr. Wilson's services, resulting in harm to Mr. Wilson's reputation.  To the extent that the Defendants' real argument is that a negative statement designed to discourage a consumer from transacting business does not constitute commercial advertising or promotion, the Defendants fail to cite to any legal authority and the Court has found none for the proposition.  Because the burden is on the Defendants to develop the argument, and they have not done so, dismissal is denied at this time.

Accordingly, the Court finds that the Plaintiffs have stated a claim for false advertising under the Lanham Act.

## B.  Racketeering Under COCCA

The first two COCCA claims allege an enterprise under Subsection (3) and conspiracy under Subsection (4) between Mr. Kennedy and AdvisorLaw, and the second two claims allege an enterprise under Subsection (3) and conspiracy under Subsection (4) between Mr. Kennedy, AdvisorLaw, and Mr. Santmyer.  These claims come under two provisions of the same statute:

<div style="margin-left: 2em;">

(3)  It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity . . . .

(4)  It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (1), (2), or (3) of this section.

</div>

C.R.S. § 18-17-104(3)–(4).  For both types of claims, *pattern of racketeering activity* "means engaging in at least two acts of racketeering activity which are related to the conduct of the enterprise".  C.R.S. § 18-17-103(3).  In turn, *racketeering activity* means to commit, attempt to commit, or conspire to commit offenses involving fraud, such as criminal impersonation under Section 18-5-113, or offenses involving governmental operations, such as tampering with a witness or victim under Section 18-8-707.[4]  C.R.S. § 18-17-103(5)(IV), (VII).

The Defendants argue that the Amended Complaint only alleges a single act that constitutes racketeering, and thus fails to state a claim.  The Court agrees.  Here, the only alleged activity was the posting of the Review.  This act occurred on one occasion, and so there is only one act.  Accordingly, both claims are dismissed.

## C.  Deceptive Trade Practices under the CCPA

To establish a CCPA violation, a plaintiff must show that (1) the defendant engaged in an unfair or deceptive trade practice, (2) the practice occurred in the course of the defendant's business, vocation, or occupation; (3) it significantly impacts the public as actual or potential consumers of the defendant's services; (4) the plaintiff's legally protected interest suffered an injury in fact; and (5) the practice caused such injury.  *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).  A person engages in a deceptive trade practice when she "disparages the goods, services,

---

[4]  Section 18-8-707 provides that a person commits tampering with a witness if she intentionally attempts to induce a witness or a person she believes is to be called to testify as a witness in any official proceeding or who may be called to testify as a witness to testify falsely or unlawfully withhold any testimony.  C.R.S. § 18-8-707(1)(a).

property, or business of another by false or misleading representation of fact." C.R.S. § 6-1-105(1)(g). To determine whether a practice significantly impacts the public, courts consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings USA Inc. v. Rocky Mountain Rhino Lining Inc*., 62 P.3d 142, 149 (Colo. 2003).

The Defendants argue that the Amended Compliant fails to state a claim because there are insufficient facts alleged, particularly with regard the Review's public impact. The Court disagrees.

Taking the allegations in the Amended Complaint as true, Mr. Kennedy posted a false review on ripoffreport.com, the espoused purpose of which was to provide information "from consumers, to consumers". The Review clearly seeks to disparage Wilson Law's services to current and potential customers and is comprised of false facts. The Plaintiffs also allege that they have suffered injuries to their reputations and brand value. Although it is true that the Plaintiffs will eventually have to present evidence of the impact of the Review on the public and on Mr. Wilson, taking the plausible allegations in the Amended Complaint as true, as the Court must at this stage, the pleading in the Amended Complaint is sufficient to proceed with this claim.

## V.  CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (**# 18**) is **GRANTED IN PART**. The Plaintiffs' COCCA claims are **DISMISSED**. The Motion is **DENIED** in all other respects.

Dated this 14th day of February, 2018.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge